See also Hill v United States, 368 US 424, 434, 7 L Ed 2d 417, 82 S Ct 468, 474 (1962).

UNITED STATES, Appellee

v

ORMOND L. WIMBERLY, JR., Private, U. S. Army, Appellant

20 USCMA 50, 42 CMR 242

*Captain Robert A. Savill* argued the cause for Appellant, Accused. With him on the brief were *Colonel Daniel T. Ghent* and *Captain Bernard J. Casey.*

*Captain Merle F. Wilberding* argued the cause for Appellee, United States. With him on the brief were *Colonel David T. Bryant, Major Edwin P. Wasinger,* and *Captain William R. Steinmetz.*

## Opinion of the Court

DARDEN, Judge:

In this case the Court's attention is concentrated on the adequacy of the military judge's inquiry into the providency of a plea. A related issue is whether the circumstances required the military judge to explain to the appellant the law establishing the liability of one person for an offense committed by another person.

After having elected to be tried by a military judge alone, the appellant pleaded guilty to the murder of Specialist Five Lon H. Schlosser while committing robbery and to the robbery of Schlosser's car. The appellant was represented by civilian counsel, who was assisted by two certified military counsel. The military judge sentenced the appellant to a dishonorable discharge, total forfeitures, confinement at hard labor for life, and reduction to the pay grade of E–1. In compliance with a pretrial agreement under which the case was tried as a noncapital one, the convening authority reduced the term of confinement to forty-five years. The Court of Military Review affirmed.

Statements included in the pretrial investigation under Article 32, Uniform Code of Military Justice, 10 USC § 832, indicate that Specialist Schlosser was shot in the head and neck on May 16, 1969; that his body was found half-buried at the Fort Hood, Texas, rifle range on May 25, 1969; that during the interval between May 16 and May 25 the appellant possessed the automobile and credit cards of the deceased; and that tracing of the automobile led to the arrest of the appellant.

The trial occurred on September 30, 1969. Consequently, the requirements this Court promulgated in United States v Care, 18 USCMA 535, 40 CMR 247 (1969), apply to it. These requirements are that the military judge (1) explain to the accused the elements of each offense charged, (2) question the accused about the latter's actions and intent, and (3) inform the accused that if he pleads guilty he waives the right against self-incrimination, the right to confront adverse witnesses, and the right to a trial of facts by members of a court-martial.

The record of the interrogation that the military judge conducted to determine the providency of the guilty plea is reproduced at the end of this opinion as an Appendix. A reading of this record establishes that the military judge was familiar with the Court's opinion in *Care.* Such a reading permits no doubt the accused knew of the rights his plea would waive and no doubt that the elements of the offenses were explained to him.

Military judges may employ different techniques in complying with the second *Care* requirement summarized above, *i.e.,* that the military judge question the accused about his actions and intentions in order to determine whether his actions constitute the offenses to which he is pleading guilty. In this instance the military judge questioned

the accused by reciting what the latter must have done to commit the offense to which he was offering to plead guilty and by asking if he had done the acts alleged in the specification. The questions tended to be long and to cover more than one action or element. While we contemplated a more segmented interrogation procedure with separate attention to the elements and to the facts, what the military judge did here marginally complies with the requirements of *Care* for interrogation about the actions constituting the offense.

Part of the controversy in this case arises from the military judge's acceptance of a stipulation that included a statement indicating the accused at one time contended the shooting of Schlosser had been by a Robert Powell. The text of this stipulation follows:

"It is hereby stipulated between trial counsel and defense counsel, with the express consent of the accused that the following facts are true:

"Specialist Five Lon H. Schlosser was found dead on the military reservation by Mr. James L. Cook of Killeen, Texas, on 25 May 1969. He had been shot by a .22 caliber pistol. Lon H. Schlosser owned a 1966 Ford Mustang, serial number 6F07C297-123. The accused was arrested while driving this car on 25 May 1969 in Waco, Texas.

"Thereafter, after being advised of his rights by McClennan County Judge George Allen and being provided a civilian counsel at no expense to himself and then after being advised of his rights under Article 31, Uniform Code of Military Justice and his rights concerning counsel, the accused stated that on 16 May 1969 he and a Robert Powell drove with Schlosser to North Nolan Road, Fort Hood, Texas, with the express purpose of robbing him of his car and money. During the course of the robbery, Powell shot and killed Lon H. Schlosser, with a pistol.

"All attempts to locate Robert Powell have met with negative results."

Appellate defense counsel advance forceful arguments against the efficacy of Prosecution Exhibit 2 ▇▇▇▇ ▇ (the stipulation) to establish an adequate compliance with *Care, supra.* If this were the only factual basis in the record, and if the military judge had not personally addressed the appellant to elicit his responses to certain questions, we might be inclined to agree. But, referring again to the interrogation that occurred, the military judge had explained that one of the elements of the murder charge was "that his death resulted from the act—from your act in shooting him with a pistol." After the military judge covered all the elements of both charges, the record shows this exchange:

"MJ: Do you understand that your plea of guilty would admit that each of these elements accurately describes what you did?

"ACCUSED: Yes, Your Honor.

"MJ: And do you believe and admit that taken together, these elements correctly describe what you did?

"ACCUSED: Yes, Your Honor."

A coordinate contention respecting Prosecution Exhibit 2 is that it required an explanation of the law of principals as this law relates to felony murder. Reaction to this contention depends on whether the stipulation is regarded as the appellant's continuing insistence that a Robert Powell had killed Schlosser or as a recital that the appellant had once advanced such an alibi to a county judge in Texas and that attempts to locate Powell were unavailing.

This is not an instance in which the military judge inadvertently admitted a stipulation that conflicted with the oral testimony of the appellant. The record reflects that the military judge took time to read the stipulation. Remembering the responses he had from the accused to his questions immediate-

ly preceding the stipulation, the military judge was justified in considering the reference about Powell's participation as a history of an alibi that was not being relied upon at trial.

In an affidavit considered by the Court of Military Review the appellant declared that he pleaded guilty because he wanted the pretrial agreed maximum of forty-five years. He also stated that if he had had any knowledge of the law of principals he would have pleaded not guilty. This is implausible. A lack of knowledge about the law of principals would much more logically induce a plea of not guilty than would a full understanding of the law in this area. Without some knowledge of the circumstances in which liability attaches to one for the conduct of another, an uninformed accused who really believed than an accomplice had shot the victim would be more likely to plead not guilty than would an accused who had been instructed that he could be held as guilty as the accomplice if he shared the latter's criminal purpose.

Prosecution Exhibit 2 contains the stipulation that the appellant and Powell drove with Schlosser to North Nolan Road "with the express purpose of robbing him of his car and money." It seems clear that the appellant's civilian counsel and his two qualified military counsel were unable to obtain any verifiable information to establish the identity or location of this Robert Powell, but if there were such a person who had killed Schlosser, the appellant's stipulation would support his conviction as an aider and abettor and hence his liability as a principal under Article 77, Uniform Code of Military Justice, 10 USC § 877.

Nothing in the stipulation negatives the appellant's guilt of the offense. It is not necessary that stipulated evidence establish an accused's guilt in order that a plea of guilty be upheld, and in order to justify setting aside a guilty plea on the basis of stipulated evidence such evidence must negative the accused's guilt of the offense. United States v Thompson, 13 USCMA 395, 32 CMR 395 (1962); United States v Cassey, 14 USCMA 558, 34 CMR 338 (1964); United States v Walter, 16 USCMA 30, 36 CMR 186 (1966); United States v Boberg, 17 USCMA 401, 38 CMR 199 (1968); United States v Falls, 19 USCMA 317, 41 CMR 317 (1970).

Accordingly, we affirm the decision of the Court of Military Review.

### APPENDIX

"MJ: Well, we'll come to those later. Now, Private Wimberly, it is my purpose to explain to you fully, the meaning and effect of your plea—proposed plea—of guilty to the Charges and Specifications. And, conduct an inquiry so that I may determine whether you fully understand it's [sic] meaning and effect. Now, I have read the Specifications and Charges and I believe you followed me as I read them. Keep those handy now, so that you may refer to them as we cover these points. You must understand that your plea of guilty will not be accepted unless you understand it's [sic] meaning and effect. You are legally entitled to plead not guilty, even though you believe that you are guilty. And if you plead not guilty, as is your right, you thus place upon the prosecution the burden of proving your guilt beyond a reasonable doubt. Now, a plea of guilty is equivilent [sic] to a conviction, if accepted, and it is the strongest form of proof known to the law. On your plea alone and without receiving any evidence, this court can find you guilty of the offenses to which you plead guilty. And your proposed plea will not be accepted unless you realize that by your plea you admit every act or omission and every element with respect to the offenses to which you plead guilty. And, that you are pleading guilty because you really are guilty. If you are not convinced that you are, in fact, guilty, you should not allow any other consideration to influence you to plead guilty. Now, do you understand what I just told you?

"ACCUSED: Yes, Your Honor.

"MJ: And, do you have any questions at this time?

"ACCUSED: No, Your Honor.

"MJ: Okay. Now, any accused at a court-martial, as I have already stated, has the right to plead not guilty. When a person pleads not guilty there are three rights that he has that flow from this right. First, he has the right against self-incrimination. That means to say that no person can be called as a witness—no accused can—to testify against himself. He can be a witness, but only at his own request. And so, when you plead not guilty, you have this right against self-incrimination. Do you understand that?

"ACCUSED: Yes, Your Honor.

"MJ: Okay. Now, when he pleads not guilty he places in issue the facts alleged constituting the offenses. Which means, by a plea of not guilty, the prosecution has the burden of trying to prove his guilt beyond a reasonable doubt based on witnesses that might be presented, items of physical evidence—all of these things if the prosecution could do so. He would have the responsibility to prove beyond a reasonable doubt his guilt of the facts constituting the offense. And so, when you plead not guilty, that means that you dispute the facts and you put the burden on the government to prove these facts. You understand that?

"ACCUSED: Yes, Your Honor.

"MJ: Okay. The third right that you get from this not guilty plea right is that you have the right to be confronted by the witnesses against you. That means that the prosecution would have to bring in witnesses, if they have them, and present them, under oath, and then testify as to what knowledge if any they have about the facts alleged in this issue. Your counsel would have the right to cross examine such witnesses. So that is the third right—the right to be confronted by witnesses against you. Now, do you understand what all of these three rights are?

"ACCUSED: Yes sir.

"MJ: Self-incrimination, right to trial of the facts, right to be confronted by the witnesses against you?

"ACCUSED: Yes, I do.

"MJ: But if you plead guilty, you waive all three of these rights. You waive the right against self-incrimination. You specifically waive your right to trial of the facts—you do so simply because you admit your guilt. You admit the facts and so there is no dispute about it. And so, then, you thereby waive a trial of the facts. And then you also specifically waive your right to be confronted by the witnesses against you because, as I earlier said, a plea of guilty, if entered providently—it admits guilt and on your plea of guilty alone, the court would be justified in convicting you of these offenses. Now, I am going to list the elements of the offenses to which you propose to plead guilty and these are the facts which the prosecution must prove beyond a reasonable doubt before the court can find you guilty if you plead not guilty. And, as I state each of these elements, ask yourself whether it is absolutely true and whether you wish to admit that it is true and then be prepared to discuss with me or respond to my questions. Now, Charge I alleges felony murder in violation of Article 118. Here are the elements of that offense. The first element would be, as to Charge I, now, that Lon H. Schlosser is dead. That is the first element. The second element, that his death resulted from the act—from your act in shooting him with a pistol. The third element, that the killing of Lon H. Schlosser, by you, was unlawful. And the fourth and last element, that at the time of the killing, that you were engaged in the perpetration of the offense of robbery. Now, do you understand those four elements?

"ACCUSED: Yes, Your Honor.

"MJ: All right. Now, just talking now in terms of the offense as a whole. The killing of a human being is not lawful when it is without legal justification or excuse. As alleged it is while perpetrating a robbery. Now, looking at Article 122, the alleged offense of robbery—the offense of robbery in Charge II, there are some three elements. The first element of that of-

fense would be that at the time and place alleged as I previously read, that you wrongfully took this 1966 Ford Mustang with a vehicle identification number as I read it—that you took it from the possession and in the presence of Lon H. Schlosser. The second element, that this taking was against the will of the said Lon H. Schlosser. The third element, that this taking by you was, as alleged, by means of force and violence. The fourth element would be that the property—this automobile—belonged to Lon H. Schlosser. The fifth element, that this property was of a value of about $800.00. And the sixth and last element, that the taking of the automobile by you was with the intent permanently to deprive Lon H. Schlosser of the use and benefit of the property. Now, for the purposes of this offense, property belongs to a person who has the title to it or who has the superior right to possession of the property or has a greater right to possession of the property than you. Concerning this offense, now, when a robbery is alleged to have been committed by force and violence, there must be actual force and violence to the person or the victim either preceding or accompanying the taking of the property against his will. The requisite amount of force involved is such as is sufficient to overcome the actual resistance of the person allegedly robbed or put him in such a position so that he makes no resistance. Now, those are the six elements of the offense of robbery. Do you understand those?

"ACCUSED: Yes, Your Honor.

"MJ: Now, going back for just a moment. You recall the fourth element and last element of the offense of felony murder was that at this time in particular, the accused—that means you—was engaged in the perpetration of robbery. And so, in con-

nection with the offense of felony murder, you must understand what the elements of that offense are. Now, the robbery itself—if I said burglary I was wrong—it is robbery, excuse me. So the elements of robbery in Charge II, some six in number, have to be considered in relation with the elements of Charge I because it is robbery alleged in the offense of the murder alleged. Now, do you understand all of the elements of each offense?

"ACCUSED: Yes, Your Honor.

"MJ: Okay. Do you have any questions as to any one of them as to the offense?

"ACCUSED: No, Your Honor.

"MJ: Do you understand that your plea of guilty would admit that each of these elements accurately describes what you did?

"ACCUSED: Yes, Your Honor.

"MJ: And do you believe and admit that taken together, these elements correctly describe what you did?

"ACCUSED: Yes, Your Honor."

Chief Judge QUINN concurs.

FERGUSON, Judge (dissenting):

I dissent.

Where, as here, the offenses before the Court *require* the imposition of a sentence to imprisonment for life[1] in the event an accused is found guilty, I cannot agree that *marginal* compliance with the requirements of United States v Care, 18 USCMA 535, 40 CMR 247 (1969), for interrogation relative to the actions constituting the offense, is sufficient under the law for the acceptance of a plea of guilty. The very controversy before us reveals the weakness in such a holding. When the military judge informed the accused that the second element of the charge of felony murder was that the

---

[1] The fact that under a pretrial agreement the convening authority had agreed to approve a sentence which included no more than forty-five years confinement at hard labor is of little importance in this case. The *sentence* by the court to life imprisonment was still mandatory under the Code and, as a practical matter, in either case the accused would be eligible for parole in fifteen years.

victim's "death resulted from the act —*from your act in shooting him with a pistol*" (emphasis supplied), the accused replied that he understood. Thereafter he answered in the affirmative when asked by the judge "do you believe and admit that taken together, these elements correctly describe what you did?" The prosecution then introduced a stipulation of fact (Prosecution Exhibit 2) which revealed that prior to trial the accused had asserted that one Powell had shot and killed the victim with a pistol during the course of the robbery of the victim in which the accused participated. It is apparent that the stipulation is factually at variance with the accused's acknowledgment that he *personally* shot the victim with a pistol. Such a variance hardly accords with the stringent requirements of *Care* that the military judge ascertain that the accused's plea of guilty was *knowingly* and *intelligently* given. While Wimberly's guilt under the law of principals, as this law relates to felony murder, may have been provable by the Government, the accused was not so charged nor was the plea made or received on that basis. When the military judge became aware of the variance between the plea and the stipulation, he should have conducted a further inquiry, explained to the accused his responsibility as an aider and abettor (Article 77, Uniform Code of Military Justice, 10 USC § 877), and secured his agreement that he fully understood the basis for his guilt. Lacking such explanation or a withdrawal of the contention that one other than the accused actually fired the pistol, I would hold that the plea was not *knowingly* and *intelligently* given. United States v Care, supra. As the Supreme Court stated in Boykin v Alabama, 395 US 238, 242, 23 L Ed 2d 274, 279, 89 S Ct 1709 (1969):

"A plea of guilty is more than a confession which admits that the accused did various acts; it is itself a conviction; nothing remains but to give judgment and determine punishment. See Kercheval v United States, 274 US 220, 223, 71 L Ed 1009, 1012, 47 S Ct 582."

My brothers take the position that the stipulation *could* be considered as a history of an alibi that the appellant had once advanced to a county judge in Texas and that the military judge was justified in considering the reference therein to Powell's participation as not being relied upon at trial. Such a position, however, ignores the fact that this was the Government's own evidence and that Wimberly had also, on two separate occasions, related this version of the events to a military investigator and, additionally, repeated it while undergoing a psychiatric evaluation at Brooke Army Medical Center, Fort Hood, Texas. After findings, the prosecution referred to the psychiatric report and stipulated, among other matters, that the report reflected: "There is no indication from either psychiatric evaluation or psychological testing that this man was insane at the time of the crime, *that he is now hallucinating the presence of an individual named Powell* or that he was delusional at the time of the alleged crime." (Emphasis supplied.) This further reference to Powell should have alerted the military judge to the inadequacy of his inquiry.

I would reverse the decision of the United States Army Court of Military Review, affirming the accused's conviction of murder, and direct that a rehearing thereon be ordered.