UNITED STATES

v.

**Michael T. MAXWELL 320 48 5552 Radioman Third Class U. S. Navy.**

**NCM 74 1900.**

U. S. Navy Court of Military Review.

Sentence Adjudged 1 Feb. 1974.

Decided 29 July 1975.

Appearances: Lt. Gordon Stephen Wright, JAGC, USNR, Appellate Defense Counsel. Lt. Thomas L. Earp, JAGC, USNR, Appellate Government Counsel.

## DECISION

EVANS, Senior Judge:

Appellant stands convicted of attempted robbery, assault and wrongful possession of a dangerous weapon in violation of Articles 80, 128 and 92, Uniform Code of Military Justice, 10 U.S.C. §§ 880, 928, 892. The sentence adjudged by members and approved by the convening authority provides for a bad conduct discharge, six months confinement, forfeiture of $175.00 per month for six months and reduction to pay grade E–1.

### I

Counsel for appellant first urges the punitive discharge may not be approved because portions of the record are not verbatim. As result of inadvertent destruction of two tapes, verbatim transcription of counsels' argument, a brief Article 39(a), 10 U.S.C. § 839(a) hearing on sentence instructions and announcement of findings were lost. Excepting a portion of defense argument, the portions have been reconstructed. No assertion of an inadequate record is raised with respect to the testimony leading to the trial results. We do not view the absence of defense counsel argument as a substantial omission so as to raise a presumption of prejudice, *United States v. Boxdale*, 22 U.S.C.M.A. 414, 47 C.M.R. 351 (1973) and *United States v. Webb*, 23 U.S.C.M.A. 333, 49 C.M.R. 667 (1975). No specific

prejudice has been asserted. We hold the record deficiencies have not prejudiced any of appellant's rights on appeal and a punitive discharge, if otherwise appropriate, may be affirmed. *United States v. Nelson,* 3 U.S.C.M.A. 482, 13 C.M.R. 38 (1953) and *United States v. Feeley,* 47 C.M.R. 581, 586 (N.C.M.R.1973).

## II

The assignments of error listed below pertain to appellant's guilty plea to one of the charged offenses:

I. The Military Judge erred by failure to inform the accused of his constitutional right to a trial of the facts of the case.

II. The Military Judge failed to adequately inquire into the factual basis of the plea of guilty to Charge I and the specification thereunder by the improper use of leading questions.

■ The guilty plea was offered to the specification under Charge I alleging wrongful possession of a dangerous weapon in violation of Article 1136, United States Navy Regulations. During the plea inquiry, the judge did not advise appellant the plea waived his right to a trial on the merits. This advice should have been proffered, *United States v. Care,* 18 U.S.C.M.A. 535, 541, 40 C.M.R. 247, 253 (1969). On the other hand, an integral part of defense to the other two charges was that flight from the scene of the assault by appellant was attempted because he did not want to be found with the weapon in his possession (R. 175). The plea was part of sound trial strategy. We are satisfied appellant knew his plea waived his right to a trial on the merits of the offense in question, *United States v. Bingham,* 20 U.S.C.M.A. 521, 43 C.M.R. 361 (1971).

■ Appellate counsel also asserts the judge did not elicit sufficient information from appellant to determine a factual basis for the plea. The inquiry in my view is not complete since the facts developed could have been ascertained by merely reading the specification. *See United States v. Peak,* No. 73 1287 (N.C.M.R.1973). We would have little difficulty in finding a *Care* violation had this been the only offense before the court. However, in fairness to the judge there was a valid reason for not conducting a detailed factual inquiry. He could determine from inspection of the three specifications possession of the weapon was convoluted with the remaining offenses that were to be contested before the court members. A detailed inquiry may have developed information that could have been inconsistent with defense position later in the trial and burdened the judge in a subsequent ruling on a particular piece of evidence. That blind adherence to the instant procedural tool is not always the sure path to avoid legal shoal water is graphically shown in *United States v. Davis,* 47 C.M.R. 831 (N.C.M.R.1973). Quite properly, judges are permitted to employ different techniques in conducting their inquiry, *United States v. Wimberly,* 20 U.S.C.M.A. 50, 42 C.M.R. 242 (1970) and see *United States v. Terry,* 21 U.S.C.M.A. 442, 45 C.M.R. 216 (1972). In the case at bar probability of criminal responsibility is established by a stipulation of fact (R. 94) and appellant's judicial confession made in connection with defense of the controverted offenses. *See, United States v. Wimberly,* supra and *United States v. Davis,* 48 C.M.R. 892, 898 (N.C.M.R.1974). Under the peculiar circumstances of this case we decline to find fault with the sparse factual development resulting from the inquiry.

## III

Appellant's counsel next contends:

The Military Judge erred in disallowing impeachment of defense witness seaman recruit Erwin when his testimony proved unexpectedly adverse to defense.

Some discussion of the evidence is necessary in disposing of this assignment of error. On the evening in question appellant took the victim Seamen Apprentice Lyons to a social gathering in the city of San Diego. Both were stationed at the Naval Training Center. Later in the evening Lyons became concerned about transporta-

tion for return to the Training Center and requested appellant to take him back. Apparently appellant did not want to take him back, but did recognize his responsibility to his shipmate by trying to find transportation from someone else at the gathering. The victim then became involved in an altercation with a guest and it eventually turned out to be appellant's task to drive the victim. According to Lyons when they were enroute to the Center the appellant pointed a revolver at him and demanded payment for the ride. Lyons stated he had money at his barracks. Upon arrival at the barracks they went to Lyons' room. Appellant was carrying a loaded revolver at his side. After entering the room Lyons hit or pushed appellant and the weapon fell to the floor and struggle ensued. Appellant regained possession of the revolver and pointed it at the victim to accomplish his escape.

Appellant testified that Lyons was belligerent enroute to the Center because of the party altercation and made various verbal threats. Appellant at the time removed the weapon from the front seat storage console and placed it on the left side of the driver's seat. Appellant denied he pointed the weapon at the victim or made any demand for money. Appellant stated he accompanied Lyons to his room only for the purpose of quelling his anger. He took the revolver along because it might be stolen if left in his car. After they went in the room, Lyons for no apparent reason knocked the gun from his hand. After the struggle appellant fled from the scene because he did not want to be found with the weapon.

 Cross examination of Lyons revealed he lied to the law enforcement authorities at a line up by not identifying appellant as the culprit. On the other hand Lyons considered himself a friend of appellant. The defense in a effort to reduce the probative value of Lyons' adverse testimony called Seaman Recruit Erwin. This witness stated he had discussed the incident with Lyons two days after it occurred. (R. 110). Erwin's testimony did not show Lyons' trial testimony covering the barracks portion of the incident was at variance with his pre-

trial version. Controversy surrounds the events while returning to the Training Center. Erwin indicated Lyons admitted to verbally abusing appellant on the way back to the Center and appellant only "showed" him a gun. We believe Erwin's testimony below, given in response to questions posed by the trial counsel, substantiated appellant's version.

"Q. Did Lyons talk to you at all about the car trip between the party and the Naval Training Center?

A. Yes.

Q. In which he said he was mad?

A. Yes, sir.

Q. What did he tell you?

A. *He told me that on the way back he was tellin' Lyons how—he was tellin' Maxwell how he was going to get Maxwell and get his brand, too. And at that time, you know, he stopped talkin' because Maxwell showed him the gun, so he stopped talkin'.*

Q. *He did tell you Maxwell pulled the gun?*

A. *No. He told me Maxwell showed him the gun.*

Q. He didn't go into any more detail than that?

A. No, Sir.

Q. Did you mention anything to, or ask Lyons whether or not Maxwell asked him for money?

A. No, Sir.

Q. Did he make any comment to you about that?

A. *Well, the only thing I asked him, I said, "Did he rob you?" You know. And he said, "No," you know." (R. 114)*

After Defense Counsel commenced his redirect examination the following colloquy occurred:

"Q. Seaman Apprentice—or, Seaman Recruit Erwin, did Lyons, when he talked to you in December, say anything to you about Maxwell's trying to rob him while he was in the car coming back to the base?

A. No, sir.

Q. He didn't say anything one way or the other?

A. No, sir.

Q. *Have you told me any story about this incident different than the one that you've told in the Courtroom today?*

TC: *Your Honor, I object. Impeaching the witness.*

MJ: *I'll have to object. Impeaching your own witness.*

DC: Your Honor, the defense would contend that part of the testimony this afternoon is in the nature of surprise testimony to the defense, and in fact it is contradictory to what the witness had indicated that his testimony would be.

MJ: *Well, first of all, I'm not going to allow counsel to ask witnesses concerning statements they made to counsel in their chambers. I don't think those are proper foundation for impeachment. And I know that's a practice around here, and it's one I don't want to hear any more. There is such a thing as an attorney/client relationship, and if you want it to mean anything you don't impeach witnesses by what they tell you in your offices. If you want them to make a statement, have it recorded.*

DC: Very well, your Honor. I would object to this now for the record purposes." (R. 116), [emphasis supplied]

Appellate defense counsel contends his client was prejudiced by the curtailment of the attempted impeachment. The Government concedes error, but the curtailment was not prejudicial. We believe the basis stated by the judge for prohibiting impeachment was incorrect. However, we also consider the judge properly exercised his discretion in the premises. When considering all of Erwin's testimony, it is in substantial agreement with that offered by appellant. A fair reading of the testimony of the witnesses indicates that whether the victim was "robbed" was a matter of semantics. To the best of their ability Lyons and Erwin maintained there was no taking of money. There is no disagreement that a gun was shown to the victim in the car; only appellant's state of mind was in dispute. Therefore, defense counsel did not have sufficient cause to impeach his own witness because his testimony was favorable, as opposed to being adverse or injurious to the defense, *see Mitchell v. Swift & Co.,* 151 F.2d 770 (5th Cir. 1965); *Bushaw v. United States,* 353 F.2d 477, 481 (9th Cir. 1965), *cert.* denied 384 U.S. 921, 86 S.Ct. 1371, 16 L.Ed.2d 441 (1966); *United States v. Scarbrough,* 470 F.2d 166 (9th Cir. 1972) and *see* generally 58 Am.Jur. Witnesses, Sections 618, 800, 802.

There is another reason for finding the judge's action acceptable. As previously noted Erwin's testimony did not damage the defense. Had the defense counsel obtained a concession of contradictory testimony from the witness this would have been of little benefit to the defense. Such a concession was not admissible for its truth, but only for impeachment value, *United States v. Graham,* 102 F.2d 436, 442 (2d Cir. 1939), *cert. denied* 307 U.S. 643, 59 S.Ct. 1041, 83 L.Ed. 1524 (1939); *Hooks v. United States,* 375 F.2d 212 (5th Cir. 1967); *Young v. United States,* 97 F.2d 200 (5th Cir. 1938) and *United States v. Eaton,* 485 F.2d 102 (10th Cir. 1973). The unleashing of defense counsel presumably would have resulted in discrediting a witness who gave some substance to accused's testimony. Simply put defense counsel, due to the acumen of the judge, was prevented from destroying the probative value of the very testimony that would have permitted the members to reject the testimony of the principal prosecution witness. We will not condemn a judge who prevents a defense counsel from hoisting himself with his own petard.

Finally, a brief comment on the judge's remarks is dictated. Except for the context in which they were made I support his views. It is, as stated by the trial judge, bad practice for counsel to rely solely on an pretrial oral conversation with a witness as basis for impeachment, Bailey & Rothblatt, Investigation and Preparation of Criminal Cases, (1970) Sections 101, 109, 126, 128 and 132. In the instant case suppose witness Erwin had denied making the contradictory statements in the office of defense counsel. This could have resulted in the defense

counsel placing his own credibility in issue. This eventuality is pregnant with the possibility for error and should be avoided.

### III

The remaining assignment of error concerning the admission of a stipulation of facts into evidence has been considered and is without merit. *See United States v. Gerlach,* 16 U.S.C.M.A. 383, 37 C.M.R. 3 (1966); *United States v. Williams,* 30 C.M.R. 650 (N.B.R.1960) and Goldstein Trial Technique (2nd ed. 1966), section 12.39.

Accordingly, the findings of guilty and the sentence as approved below are affirmed.

Senior Judge HOPPE and Judge GLASGOW concur.