UNITED STATES

v.

William E. SMITH, 214 62 0809, Sergeant
E-5, U.S. Marine Corps.

NCM 76 1873.

U.S. Navy Court of Military Review.

2 Feb. 1977.

LT Karl Zobrist, JAGC, USNR, Appellate Defense Counsel.

LT Steven D. Moore, JAGC, USNR, Appellate Government Counsel.

Before MURRAY, MALLERY and GREGORY, JJ.

MALLERY, Judge:

Appellant, a drill instructor, was convicted, consonant with his pleas, by a general court-martial with members, of six violations of Article 92, 10 U.S.C. § 892, two violations of Article 93, 10 U.S.C. § 893, and fourteen violations of Article 128, 10 U.S.C.A. § 928. All the offenses involved maltreatment of recruits in appellant's charge. Appellant was sentenced to a bad conduct discharge, confinement at hard labor for three months, forfeiture of "one-half pay for three months", and reduction to pay grade E–1. The convening authority approved the findings and only so much of the sentence as provides for the discharge, the confinement, the reduction, and forfeiture of $180.00 pay per month for one month.

Now, appellant assigns the following errors:

I THE CONVENING AUTHORITY'S ORAL ORDER WHICH EXCUSED FOUR OFFICER MEMBERS FROM SERVING ON THE APPELLANT'S COURT WAS NOT CONFIRMED IN WRITING.

II UNLAWFUL COMMAND INFLUENCE PREVENTED THE APPELLANT FROM BEING TRIED BY SPECIAL COURT–MARTIAL, FROM NEGOTIATING A FAVORABLE PRETRIAL AGREEMENT, AND FROM RECEIVING A FAIR SENTENCING HEARING.

III THE MILITARY JUDGE ERRONEOUSLY DENIED THE APPELLANT'S MOTION FOR CHANGE OF VENUE AS A PREJUDICIAL ENVIRONMENT EXISTED AT THE TIME OF TRIAL AND SERVED TO DEPRIVE THE APPELLANT OF A FAIR SENTENCING HEARING.

IV THE STANDARD PROVIDED BY PARAGRAPH 69e, MCM, TO EVALUATE MOTIONS FOR CHANGE OF VENUE PLACES TOO MUCH OF A BURDEN UPON THE MOVANT, PREJUDICED THE APPELLANT AS HIS MOTION WAS DENIED, AND SHOULD BE CHANGED TO THE STANDARDS UTILIZED BY THE FEDERAL COURTS.

V THE PLEAS OF GUILTY TO SPECIFICATIONS 1, 2 AND 12 OF CHARGE IV WERE IMPROVIDENT.

VI THE SENTENCING WAS INAPPROPRIATELY HARSH.

We shall deal with said assignments *seriatim*:

I

■ Appellant correctly points out that the convening authority orally excused four persons from sitting as members of the court-martial but failed to later confirm his oral order in writing. In the interest of the orderly administration of justice, the convening authority should have confirmed the oral excuse of the members in writing. However, his failure to do so in no way deprived the court-martial of jurisdiction to try appellant's case. Paragraph 37c (2) of the Manual for Courts-Martial, 1969, (Revised Edition) states as follows:

*Excusing personnel.* If the convening authority excuses a member or counsel from attendance at future sessions of a general or special court-martial in a particular case or series of cases, but does not desire to relieve him permanently as a member or counsel, *he may do this by oral order, message, or signal and need not confirm the action by a written order.* [emphasis added].

The case cited by appellant as authority for his proposition, *United States v. Singleton,* 21 U.S.C.M.A. 432, 45 C.M.R. 206 (1972), is inapposite. In that case, the Court of Military Appeals held, under very special circumstances which we need not discuss here, that an oral *appointment* of a military judge, a trial counsel, and a defense counsel, which was not later confirmed in writing, was invalid. Assignment of Error I is without merit.

## II

■ Prior to the trial of this case, the convening authority had, at the request of the Commandant of the Marine Corps, issued a memorandum to "All Officers, Sergeants and above, and Drill Instructors" at Marine Corps Recruit Depot, Parris Island, South Carolina. The memorandum directed the reader's attention to a particular article on maltreatment of recruits which had been published in the New York Times. In that article the author had, *inter alia,* criticized what he considered to be an overly liberal pretrial agreement which had been signed in an earlier maltreatment case by the same convening authority. In his memorandum, the convening authority, in addition to condemning maltreatment in general, defended the earlier pretrial agreement as not being overly liberal under the circumstances.

The convening authority, in his capacity as commanding General, Marine Corps Recruit Depot, Parris Island, on one occasion, addressed all the commissioned and non-commissioned officers at the Recruit Depot and, on another occasion, addressed all the commissioned officers assigned to the Recruit Training Regiment. At both meetings, the Commanding General condemned maltreatment of recruits, made it absolutely clear that neither he nor the Commandant would tolerate or forgive such conduct, and explained the extremely detrimental effect maltreatment of recruits could have on the future of the Marine Corps.

It is judicially noticed that prior to and during the trial of this case, the United States Marine Corps had been extensively and seriously criticized in the national mass media of communication concerning alleged abuses in the Marine Corps recruit training system.

Finally, it is noted that the terms of the pretrial agreement and the sentence adjudged in this case were somewhat more stringent than the terms and sentences in some other cases of maltreatment tried earlier.

Appellant argues that, as a result of all the circumstances described above, the trial of his case was infected by command influence. He further argues that the command influence resulted in his being tried by a general court-martial instead of a special court-martial; that it prevented him from negotiating a more favorable pretrial agreement; and that it prevented him from receiving a fair hearing on his sentence. We can find no evidence of command influence nor of the effects appellant complains of.

We have already considered the effect of the convening authority's memorandum and of the New York Times article in the case of *United States v. Henson,* No. 76 0859, —— M.J. —— (N.C.M.R. 17 August 1976), *pet. den.,* 2 M.J. 179 (C.M.A.1976). In that case, Senior Judge Murray, reasoned as follows:

> In the case *sub judice,* there is no indication that the convening authority [General Poillon] was predisposed against appellant, had prejudged the case with respect to the sentence, or had formed an inelastic attitude. The request from the Commandant to the convening authority, who was the commanding officer of one of two main recruit depots of the Marine Corps, evidences nothing more than justifiable concern over the problems facing the Marine Corps. We find no evidence that the convening authority was pressured into taking any particular action with respect to this case, and appellant points to no evidence other than the spectre of pressure that indicates that the convening authority was other than an impartial and fair reviewing authority.

If we were to disqualify convening authorities merely because service problems were generated by the misconduct of service members and such problems were given notoriety and were a cause for concern by service officials, we would be hard pressed to find any acceptable convening authority. The conscientious commander is obviously going to be aware of the problems generated by misconduct and particularly so when such misconduct is highly publicized in the national arena. This does not suggest that in his conscientious exercise of his office, he cannot impartially execute his disciplinary responsibilities in a fair, judicial or quasi-judicial capacity. We are not persuaded by appellant's naked assertion of lack of impartiality against the convening authority in this case merely because of the publicity generated by appellant's judicially confessed criminal conduct. We find nothing in the memorandum complained of to support the appellant's contention. . . . [*United States v. Henson, supra,* at ——].

We believe that Senior Judge Murray's reasoning in *Henson* applies equally in the case, *sub judice.* We are convinced that the New York Times article, the Commandant's request to the convening authority, and the convening authority's memo did not individually nor collectively constitute command influence. The same reasoning and conclusion apply to the meetings the convening authority held with the officers and non-commissioned officers under his command and to the national publicity concerning alleged maltreatment of recruits. None of these circumstances constitute or are indicative of command influence. Finally, appellant's pretrial agreement, which originated with appellant and which was merely accepted by the convening authority, cannot by any stretch of reasoning be construed as being indicative of command influence.

While this case was being tried, as well as before and after, there was considerable adverse publicity in the news media alleging abuses in the Marine Corps recruit training system. The Marine Corps, with many voices starting with the Commandant's, condemned all maltreatment of re-cruits and indicated its firm and unalterable refusal to either forgive or forget such conduct. It seems to us that the response of the Marine Corps was entirely just and proper. Any failure to so respond would have been irresponsible and unconscionable.

We are convinced that the convening authority was not influenced by nor subject to any command influence nor did he exert any command influence on the trial of the case, *sub judice.* Assignment of Error II is without merit.

### III

At trial, appellant moved for a change of venue. In essence, he based his motion on the same facts which he now uses to support his arguments for Assignment of Error II, as discussed, *supra.*

It is within the power of a trial military judge to grant a motion for a change of venue. The basis for making and granting such motions is provided in Paragraph 69*e,* Manual for Courts-Martial, 1969, (Revised Edition), which reads, *inter alia,* as follows:

If the accused demonstrates that there exists at the place of trial where the prosecution is pending so great a general atmosphere of prejudice against him that he cannot obtain a fair and impartial trial in that place, he is entitled, upon a motion for a change of venue, to be tried at some other place.

The decision whether or not to grant a motion for a change of venue resides within the discretion of the trial military judge to whom the motion is addressed. We will not disturb the trial judge's decision unless it is manifest to us that he abused his discretion. *United States v. Carter,* 9 U.S.C.M.A. 108, 25 C.M.R. 370 (1958). In the case, *sub judice,* we are convinced that the trial military judge did not abuse his discretion in denying the motion for a change of venue.

Proof that a particular case has been widely publicized, standing by itself does not establish that a court-martial has been influenced by such publicity. *United States v. Vigneault,* 3 U.S.C.M.A. 247, 12 C.M.R. 3 (1953). Further, the mere fact that court-

martial members have heard or read about the case they are assigned to try, standing alone, is not a sufficient basis for a change of venue so long as the members will not be influenced by what they have heard or read. *United States v. Svenson,* 35 C.M.R. 645 (A.B.R.1969), *pet. den.,* 15 U.S.C.M.A. 694, 36 C.M.R. 541 (1965). In the case, *sub judice,* all of the court-members stated, in essence, on *voir dire* that they could ignore or set aside whatever they had heard or read concerning the case and concerning maltreatment of recruits in general. We are convinced, as was the trial military judge, that the members' responses were honest and accurate.

We are convinced that there was no factual basis for a change of venue in the case, *sub judice,* and that the trial military judge did not abuse his discretion in denying the motion for a change of venue. Assignment of Error III is without merit.

### IV

■ Appellant urges us to abandon the standard for granting a motion of a change of venue expressed in Paragraph 69*e,* MCM, 1969 (Rev.), in favor of a different standard more favorable to appellant. He argues that he need show only " . . . the *likelihood* that seriously prejudicial materials may have reached the [members of the court-martial] . . . ." Clearly, this test that appellant proposes is dramatically different from the test specified in the Manual which requires that the accused demonstrate " . . . that there exists at the place of trial where the prosecution is pending so great a general atmosphere of prejudice against [the accused] that he cannot obtain a fair and impartial trial in that place . . . ." Appellant refers to this as the "actual prejudice" test. We can find no reason, constitutional or otherwise, to abandon the test which has universally been applied in the military justice system. *United States v. Gravitt,* 5 U.S.C.M.A. 249, 17 C.M.R. 249 (1954); *United States v. Heflin,* 23 U.S.C.M.A. 505, 506, n.6, 50 C.M.R.

644, 645, 1 M.J. 131, 132 (1975). Assignment of Error IV is without merit.

### V

■ Appellant argues that his pleas of guilty to Specifications 1, 2, and 12 of Charge IV were improvident. It is true that appellant's in-court confessions of guilt of these offenses during the *Care* inquiry were not as unequivocal as his confessions of guilt of the other offenses of which he stands convicted. The trial military judge could have, and perhaps should have, questioned appellant more closely as regards these offenses. However, we have studied appellant's responses carefully and are convinced that his pleas of guilty to those offenses were provident. The trial military judge's providency inquiry meets the minimum requirements of *United States v. Care,* 18 U.S.C.M.A. 535, 40 C.M.R. 247 (1969) and of *United States v. Wimberly,* 20 U.S.C.M.A. 50, 42 C.M.R. 242 (1970). Assignment of Error V is without merit.

### VI

■ Appellant argues that a bad conduct discharge is inappropriately severe in this case. We are keenly and sympathetically aware of appellant's outstanding military record prior to the offenses in question. We are also keenly aware of the demanding and frustrating nature of a drill instructor's duties. We believe that appellant sincerely wanted to do a good job in training his recruits. However, appellant by his continued actions has demonstrated a studied contempt for the law and for proper military authority. More importantly, his brutal conduct demonstrates a total disregard for the rights and welfare of others. We are convinced that a bad conduct discharge is entirely appropriate and not excessive under the circumstances.

Accordingly, the findings and sentence, as approved on review below, are affirmed.

Senior Judge MURRAY and Judge GREGORY concur.