**UNITED STATES**

v.

**Airman Basic Richard ESCOBAR,
FR 047–50–8683.**

**ACM S24576.**

U. S. Air Force Court of Military Review.

Sentenced Adjudged 28 Nov. 1977.

Decided 24 April 1978.

**594**

Appellate Counsel for the Accused: Colonel B. Ellis Phillips and Captain Thomas S. Markiewicz.

Appellate Counsel for the United States: Colonel Julius C. Ullerich, Jr., Major Alvin E. Schlechter and Captain Kenneth L. Buettner.

Before EARLY, ORSER and ARROWOOD, Appellate Military Judges.

## DECISION

ORSER, Judge:

Tried by a special court-martial composed of a military judge sitting alone, the ac- cused was convicted, despite his not guilty plea, of larceny of a leather jacket, in viola- tion of Article 121 of the Uniform Code of Military Justice, 10 U.S.C. § 921. The ap- proved sentence consists of a bad conduct discharge, confinement at hard labor for two months and forfeiture of $100.00 per month for two months.

The principal issue before us is whether the court-martial properly exer- cised jurisdiction over the offense. Al- though the crime was charged as having occurred on the military installation at Lowry Air Force Base, Colorado,[1] the stipu- lated evidence shows that the accused wrongfully gained possession of the jacket at the victim's apartment in the local civil- ian community. For reasons set forth be- low, we hold that the offense was suffi- ciently service connected to justify the ex- ercise of military jurisdiction. *Relford v. Commandant,* 401 U.S. 355, 91 S.Ct. 649, 28 L.Ed.2d 102 (1971).

The victim, an Airman named Bailey, was in the process of moving his personal pos- sessions from base quarters at Lowry to an off-base apartment he had rented. At the suggestion of a military acquaintance of Bailey and the accused, the latter volun- teered to assist with the move.

After helping transport Bailey's property from Lowry to his new off-base quarters, the accused assisted with the unloading. While so engaged, the accused surrepti- tiously took a leather jacket from a bundle of clothing and hid it near the apartment complex. Later, he retrieved the jacket from its hiding place and took it to his own quarters located on Lowry Air Force Base. Within a few days thereafter, one of Bai- ley's friends observed the accused wearing

---

1. In passing, we find without merit a related claim by the defense that the military judge erred in permitting the government to proceed without demonstrating "through sworn charges/indictment, the jurisdictional basis for trial of the accused and his offenses." *United States v. Alef,* 3 M.J. 414, 419 (C.M.A.1977). Here, the language of the sworn charge clearly alleges that the crime, a violation of the Uni- form Code, was committed on the military in- stallation by a member of the Air Force. As appellate government counsel argue, such in- formation constitutes a sufficient demonstra- tion of the jurisdictional basis for trial by court- martial. *Relford v. Commandant,* 401 U.S. 355, 91 S.Ct. 649, 28 L.Ed.2d 102 (1971); *United States v. Hedlund,* 2 M.J. 11 (C.M.A.1976). Un- der the circumstances, the inclusion of such of the other *Relford* factors as might be present would, in our opinion, constitute superfluous verbiage of a sort not required by the mandate in *Alef.*

the jacket at the Lowry Airman's Club. Security policemen were duly notified and promptly took custody of both the jacket and the accused. Bailey was contacted and identified the jacket as the one he had lost during his move.

At trial, the defense moved that the charge be dismissed for lack of jurisdiction. On behalf of the government, the trial counsel successfully argued for adoption of the common law doctrine that larceny is a continuing offense and, on that basis, a person who commits a larceny in one jurisdiction and transports the purloined property into another may be prosecuted in that latter jurisdiction as if all elements of the crime were committed there. *See* 156 A.L.R. 862; 2 Wharton Criminal Law and Procedure, Sec. 485; 50 Am.Jur.2d, Sec. 115.

As pointed out by the trial counsel during his argument, and in an excellent brief he submitted on the issue, a majority of the state courts that have considered the matter have adopted the theory that larceny, by nature, is a continuous offense that is deemed to occur anew each time a thief transports his stolen property into a different jurisdiction. 156 A.L.R. 862 et seq., and the cases cited therein. In the language of the Annotation, this view "is based on the idea that the unlawful possession of the thief in the state into which the stolen goods are brought constitutes a new caption and asportation—a new deprivation of the owner of his right to his property and its possession—and is punishable in that state as a new offense." Id., at 866.

Although few federal decisions can be found that discuss the concept, or any aspect thereof, those that do have generally recognized it to be a valid legal principle.[2] A recent example appears in *Fogle v. United States,* 336 A.2d 833 (D.C.Crt.App.1975). In *Fogle,* the Court utilized the theory in evaluating the defendant's intent. The Court reasoned that the asportation aspect

of the larceny continued until the defendant had disposed of a stolen automobile at a car shredder. In another case, where the defendant was judged guilty as a principal on an aider and abettor concept by virtue of the assistance he provided the actual taker in the transportation of stolen property, the Court stated:

> The crime of larceny obviously continues as long as the asportation continues and the original asportation continues at least so long as the perpetrator of the crime indicates by his actions that he is dissatisfied with the location of the stolen goods immediately after the crime and with no more than a few minutes delay causes another to continue the asportation.

*United States v. Barlow,* 152 U.S.App.D.C. 336, 344, 470 F.2d 1245, 1253 (1972).

Finally, in the recent case of *United States v. Willis,* 559 F.2d 443 (5th Cir. 1977), cited by appellate government counsel in their brief, the Circuit Court agreed with the *Barlow* analysis in declaring that robbery is not a consummated transaction until the immediate removal phase is completed.

To our knowledge, the United States Supreme Court has not specifically declared a position on the jurisdictional ramifications of the continuing larceny theory. However, we believe it somewhat significant that the Court declined to review an Iowa Supreme Court decision sanctioning application of the doctrine. The Iowa case concerned a conviction of larceny of a motor vehicle where the vehicle was stolen in the State of Nebraska and driven across the border into Iowa. In affirming the conviction, the Court stated: "[W]hat petitioner overlooks is that he was convicted not for what he did in Nebraska, but because his act in bringing the stolen truck into Pottawattamie County [Iowa] amounted to larceny in that county." *Newlon v. Bennett,* 253 Iowa 555, 112

---

2. Some early federal decisions that discuss the validity of the doctrine were cited by the Court of Appeals of Maryland in the case of *Hamilton v. State,* 265 Md. 256, 288 A.2d 885 (1972); *United States v. Tolson,* 1 Cranch C.C. 269, 28 Fed.Cas. p. 200 (1803); *United States v. Hau-* key, 2 Cranch C.C. 65, 26 Fed.Cas. 227 (1812); *United States v. Mason,* 2 Cranch C.C. 410, 26 Fed.Cas. 1196 (1823); *Cf.* however, *Brown v. United States,* 35 App.D.C. 548 (1910), in which the Court declined to adopt the theory.

N.W.2d 884 (1962), *cert. denied,* 369 U.S. 658, 82 S.Ct. 1037, 8 L.Ed.2d 274 (1962).[3]

Our research has disclosed no military cases that specifically adopt or reject the doctrine, though it is discussed in at least one decision. See *United States v. Pleuss,* 29 C.M.R. 648 (A.B.R.1960). The Air Force Board of Review decision of *United States v. Carter,* 23 C.M.R. 872 (A.F.B.R.1957), does, however, tend to support the theory, at least by inference. Granting, as argued by appellate defense counsel, that *Carter* is not a jurisdiction case, the decision nevertheless holds that one who does no more than aid in the asportation and disposal of property knowing it to be stolen is guilty as a principal in the theft of the property, and not merely as an accessory after the fact or as a receiver of stolen property. We agree with the trial counsel's analysis that the implication of *Carter* is that larceny continues at least as long as there is any continuation of the asportation. If that were not so, the Court could not have concluded that an individual who assisted in the asportation aspect was guilty as a principal.

The accused's counsel contended at trial and appellate defense counsel now contend that the United States Court of Military Appeals implicitly rejected the continuing larceny theory in the case of *United States v. Riehle,* 18 C.M.R. 603, 40 C.M.R. 315 (1969). In *Reihle,* the accused stole an automobile from a used car dealer in the civilian community and then brought it onto the military installation. Analyzing the jurisdictional validity of the accused's conviction in light of *O'Callahan v. Parker,* 395 U.S. 258, 89 S.Ct. 1683, 23 L.Ed.2d 291 (1969), the Court, with Chief Judge Quinn dissenting, reversed the conviction, stating:

> When the automobile was taken from the used-car lot, the crime of larceny was complete and jurisdiction was thereupon vested in the local courts. There is simply no evidence that the larceny was "service connected," as the subsequent use of

the vehicle was irrelevant to the proof of the charged offense. We take no view on whether the bringing of stolen property upon a military base is an offense triable by court-martial. That determination will have to be left for resolution in a proper case. [40 C.M.R. at 316].

From all indications, Reihle was charged from an off-base rather than an on-base larceny, and the Court's analysis and decision was, accordingly, based purely on *O'Callahan* considerations. We do not find in the decision a rejection of the continuing larceny theory of jurisdiction. The case contains no mention of the concept, a not surprising phenomenon in view of the strong indication that the offense was charged as having occurred off-base. It may be true, as the government asserts, that the Court was rhetorically alluding to the theory in its language concerning the possibility of there being a military offense involved in the bringing of the property onto a military installation. On the other hand, it seems equally plausible that what the Court was leaving for later resolution was whether the act of bringing stolen property onto a military installation constitutes a crime in and of itself, perhaps in violation of the general article of the Uniform Code.

■ That determination must again be left for another day. Refocusing on the sole issue presented by the charge before us, we are persuaded that the interests of military jurisprudence will best be served by adoption of the continuing larceny doctrine. As cogently argued by the government's representative at trial, the policy considerations that have motivated numerous states to adopt the concept are at least equally applicable in the military setting. Those considerations were well expressed by the Supreme Judicial Court of the State of Maine in the case of *Younie v. State,* 281 A.2d 446 (Me., 1971). There, in finding the doctrine viable, the Court stressed the easy

---

**3.** Although in the Iowa case, as in numerous others, the prosecution was based on a statute making such conduct punishable, other cases indicate that the continuing larceny doctrine is viable even in the absence of express legislative enactment. See 156 A.L.R. 862 *et seq.* We are persuaded by such decisions that the absence of specific provision for the doctrine in the Uniform Code of Military Justice is not a bar to its application in appropriate military cases.

and rapid mobility between the various states and the fact that each state has a jurisdictional interest in minimizing the number of larcenies in other states for the sake of protecting its own citizens and to reduce law enforcement expenses inherent in the trafficking of stolen property.

Comparison of the state to state mobility with the even greater mobility that exists in the armed forces environment provides an indication of the potential utility of the continuing larceny doctrine in military law. As argued by government counsel, in many instances service member perpetrators of thefts are not identified until they are transferred to new locations, often thousands of miles distant from the original situs of their crimes. In such cases, the retransfer of the culprits to the local jurisdiction involves great expense and administrative inconvenience, both to the civilian and military communities. Those problems would be particularly acute in situations such as the one at hand where the larceny victim is another serviceman. In the words of the trial counsel:

> In such a case the local community may have little if any interest in prosecuting the case, and the military has a great interest in resolving crimes between its members, and if the taker and victim are stationed in places far away from the original taking, the utility of the . . doctrine is clear.

■ Applying the doctrine we have determined to be viable in military law, the accused committed a new crime of larceny for purposes of military jurisdiction at the time he transported the stolen jacket onto the base shortly after he wrongfully took it from his fellow airman. Pursuant to this concept, the accused's unlawful possession of the property at the time he entered the military installation constituted a renewed caption and asportation. 156 A.L.R. 862, 864. Thus, for purposes of service connection, all essential elements of the crime are deemed to have occurred on the military base where the jacket was ultimately found in the accused's possession. On the basis of this rationale, the court-martial properly exercised its jurisdiction over the offense. *Relford v. Commandant,* supra.

Manifestly, the instant circumstances demonstrate the utility of the continuing larceny doctrine in the military community. The crime was between two servicemen. The accused was provided an opportunity to commit the larceny as a result of his volunteered assistance in moving a fellow serviceman from the base to new off-base quarters. The stolen property was discovered in the accused's possession on-base. All factors considered, the military community unquestionably had the paramount interest in prosecuting the offense. See *United States v. McCarthy,* 2 M.J. 26 (C.M.A.1976). By means of application of the doctrine of continuing larceny, that interest has been properly served.

■ We find no merit in the final appellate defense claim that the military judge erred in accepting in evidence a stipulation of fact amounting to a confession after the accused had pleaded not guilty. Here, as required by *United States v. Bertelson,* 3 M.J. 314 (C.M.A.1977), and our own case of *United States v. Rempe,* 49 C.M.R. 367 (A.F.C.M.R.1974), before accepting the stipulation the military judge conducted an inquiry with the accused that satisfied the basic requirements of *United States v. Care,* 18 U.S.C.M.A. 535, 40 C.M.R. 247 (1969), and *United States v. Wimberly,* 20 U.S.C.M.A. 50, 42 C.M.R. 242 (1970). The trial judge expressly advised the accused that the stipulation practically amounted to a confession and that it could not be accepted without his consent. By detailed questions, he further ascertained from the accused, on the record, that there was a factual basis for the stipulation. Finally, he insured that there was no plea bargain in the case. On the basis of the military judge's inquiry, we are satisfied that the accused knowingly, intelligently and voluntarily consented to the admission of the stipulation.

For the reasons stated, the approved findings of guilty and the sentence are

AFFIRMED.

EARLY, Chief Judge, and ARROWOOD, Judge, concur.