### UNITED STATES

v.

**Timmy D. PIATT, 202 42 8479, Sergeant (E–5), U.S. Marine Corps.**

### NMCM 82 0960.

U. S. Navy-Marine Corps Court of Military Review.

Sentence Adjudged 24 Oct. 1981.

Decided 28 Dec. 1982.

---

**3.** We consider the cautionary language of *United States v. Shackelford*, 2 M.J. 17 (C.M.A. 1978), inapposite to the case at bar.

LCDR William A. DeCicco, JAGC, USN, Appellate Defense Counsel.

LT Louis F. Sadler, JAGC, USNR, Appellate Defense Counsel.

LCDR W.A. Dorsey, JAGC, USNR, Appellate Government Counsel.

Before CEDARBURG, Chief Judge, and GORMLEY and MAY, JJ.

CEDARBURG, Chief Judge:

Appellant was convicted by general court-martial comprised of officer and enlisted members. Contrary to his pleas, he was found guilty of one specification of maltreatment, one specification of assault with a means likely to cause grievous bodily harm and one specification of simple assault, each involving recruits, in violation of Articles 93 and 128, respectively, of the Uniform Code of Military Justice, 10 U.S.C. §§ 893 and 928.[1] He was sentenced to a bad conduct discharge, confinement at hard labor for 1 year, forfeiture of $300.00 pay per month for 12 months and reduction to pay grade E–1.

Appellant has assigned seven errors. Discussion of two interrelated assignments of error is appropriate.

## I

BECAUSE OF UNLAWFUL COMMAND INFLUENCE, APPELLANT WAS DENIED HIS RIGHT TO A FAIR AND IMPARTIAL TRIAL.

## II

THE MILITARY JUDGE ERRONEOUSLY DENIED APPELLANT'S MOTION FOR A CHANGE OF VENUE.

Appellant was a drill instructor assigned to the Marine Corps Recruit Depot, San Diego, California at the time of the alleged offenses. The Commanding General had referred charges of maltreatment and ag-

---

1. The simple assault finding was a lesser included offense to a maltreatment offense alleged as a violation of Article 93.

gravated assault involving recruits in appellant's platoon to a general court-martial on 24 August 1981. Appellant was arraigned on 21 October 1981. The Commandant of the Marine Corps had addressed all commissioned and staff noncommissioned officers at the Recruit Depot the previous day. The appellant, prior to entering pleas moved "... to dismiss all charges and specifications on the grounds of unauthorized command influence which [had] affected the defense's ability to obtain a defense."

The military judge endeavored to put the motion in sharper focus. From the discussion that followed, the thrust of the defense contention emerged three-pronged; as a result of the Commandant's speeches, the testimony of certain specific prospective witnesses had been "chilled", a general and pervasive aura of command influence had arisen which would discourage discovery and utilization of helpful defense information, and a fair trial before members drawn from the Recruit Depot could not be obtained.

Two prospective character witnesses were first called by the defense. Staff Sergeant S testified that he had been approached by the appellant and by appointed defense counsel and had agreed to be a witness on appellant's behalf. After the Commandant's presentation, he admitted some reservations about testifying because his testimony might not correspond to the views of the Commandant and might affect his personal career. He disclaimed being directly approached by anyone in regards to the testimony he would give or having received any threats. He indicated he would tell the truth about any factual knowledge he had and would honestly express any opinion solicited regarding appellant's character. He expressed some anxiety of how his testimony might be received by higher authority in view of the high interest the case had generated, but reiterated his intention to testify truthfully and without reservation if called. Eventually Staff Sergeant S was called and gave presentencing testimony which attested to appellant's outstanding performance as a drill instructor and the high esteem with which he regarded him.

First Lieutenant V also was called on the motion. He testified that in his capacity as a Series Commander, appellant had served under him. Appellant had approached him prior to the Commandant's appearance to be a character witness and he had agreed to do so. When he was questioned by the military judge, he unqualifiedly confirmed that he was willing to testify completely and without hesitation, notwithstanding the remarks of the Commandant. First Lieutenant V was not called by the defense during the trial. The defense did not desire to call any additional witnesses in support of their contention that the testimony of prospective witnesses had been obstructed.

Four witnesses, including the Commanding General of the Depot, the convening authority, were called and testified with little variance, of their recollection of the content of the Commandant's speeches before the officer and staff noncommissioned officers of the command. There were no substantial differences between the speeches before the two groups. The Commanding General testified additionally that he had not spoken to the Commandant about appellant's case, either before or after its referral to general court-martial. Estimates of the length of the speeches ranged from an hour to an hour and one-half. The portions of the Commandant's remarks to which the defense attribute illegal command influence were those dwelling on "bad" drill instructors and the adverse effect which it had upon the image of the Marine Corps. The substance of his remarks were fairly summarized in the brief of the appellate defense counsel from which we quote.

In these lectures [more properly denominated speeches], the Commandant discussed various topics, but his comments centered on the improved standing that the Marine Corps enjoyed in the eyes of the American public and how this standing helped achieve better funding objectives and treatment by the Congress. As his remarks came to a conclusion, he stated that this good standing could be jeop-

ardized by "bad" drill instructors, and that although the majority of drill instructors did their job well, there were a small number whose acts tended to jeopardize the Marine Corps' good standing. He said that these bad drill instructors are those who assault and/or maltreat their recruits and that these drill instructors are stupid, disobedient, and cowardly. The Commandant then specifically stated that there was a category of drill instructor that he labeled a "supercoward." This is one who uses recruits to assault another recruit. Appellant was charged with these types of offenses. He concluded by saying that there was no place in the Marine Corps for cowards, that he would not want to go into battle with such persons, and that these "bad" drill instructors should "seek other employment."

Based upon the foregoing exposition, the military judge denied the motion to dismiss and, as alternately framed, the request for a change of venue. He specifically left open questioning of the prospective court members during voir dire to determine their ability to render a fair and impartial verdict. He indicated that the motion could be renewed based upon revelations during voir dire. Following voir dire of the members, all of whom had been present during one or the other of the Commandant's speeches, the defense again moved for a change of venue. The military judge denied the motion.

■ Appellant argues that the remarks, timed as they were, one day before his trial on charges founded on abuse of recruits by other recruits allegedly acting under his orders, were a blatant and clear violation of Article 37, Uniform Code of Military Justice, 10 U.S.C. § 837, by the Commandant of the Marine Corps, which deprived the appellant of his fundamental right to an impartial trial. We do not reach the same conclusion from the record developed below.

The Commandant's remarks were incident to periodic visits by him to major Marine Corps commands. The Commanding General of the Depot testified it had been a year since the Commandant's last visit. The speech was generalized in its recitation of what could be characterized as the "state of the Marine Corps" and factors which influenced the ability of the Marine Corps to inspire public confidence and political support to accomplish its mission. He discussed equipment, modernization, quality of personnel being recruited and training. His remarks logically progressed to the mission of the group he was addressing, that is, recruit training. He gave his evaluation of the performance of drill instructors, and types of conduct which were unsatisfactory on a graduated scale. While the Commandant in his speech did allude to maltreatment under circumstances remarkably similar to the allegations in the present case and characterized drill instructors who would cause recruits to abuse other recruits as cowards, who should seek other employment, we cannot conclude that appellant was thereby prevented from fashioning a defense or obtaining a fair and impartial trial. Maltreatment of military members is obviously not condoned in the military. It is specifically proscribed by the Uniform Code of Military Justice. Military commanders have a justifiable concern in assuring that such practices do not arise and preventing recurrences, when contrary to the law, they do arise. Command attention is a predictable and entirely proper response. Indeed, as we pointed out in an analogous case involving recruit maltreatment, a failure to respond would be irresponsible and unconscionable. *United States v. Smith*, 1 M.J. 1204, 1207 (N.C.M.R. 1977).

■ The timing and content of the Commandant's remarks unquestionably did pose problems, but the military judge resolved them in a fair and logical manner. He determined whether the appellant had been denied the testimony of any specific prospective witnesses whose testimony might have been denied or diluted as a result of the speeches. He properly concluded that all such witnesses denominated by the defense were willing to appear and testify completely and truthfully. Testimony of

four separate witnesses was taken which placed on the record the content of the Commandant's speeches. No real dispute exists as to what was said nor the portions which the defense alleges constituted illegal command influence. We conclude that, considered in their objective entirety, the remarks did not produce a pervasive influence of command which would prevent appellant from obtaining a fair and impartial court-martial. In this regard, and on the issue of the change of venue, we find the voir dire of the court members particularly enlightening. The assurances of the court members were not perfunctory as those which the Court of Military Appeals found inherently suspect in *United States v. Rosser*, 6 M.J. 267 (C.M.A.1979). The military judge in his voir dire devoted substantial attention to each member's perception of the speeches and the effect on their ability to render a fair and impartial verdict. One member was successfully challenged for cause and another peremptorily challenged. Under the circumstances, we are convinced that the speeches did not constitute illegal command influence nor did they present an appearance of it which would warrant corrective action. We conclude that the military judge did not abuse his discretion in denying the motion for a change of venue. Paragraph 69e, *Manual for Courts-Martial, 1969 (Rev.); United States v. Carter*, 9 U.S. C.M.A. 108, 25 C.M.R. 370 (1958).

We have considered the remaining assignments of error and the Government's reply thereto and conclude that the findings and sentence are correct in law and fact and that no error materially prejudicial to the substantial rights of the appellant was committed. Accordingly, the findings and sentence as approved on review below are affirmed.

Judge GORMLEY and Judge MAY concur.