UNITED STATES

v.

Rodney L. STALEY, Jr., 572
81 3399, Corporal (E–4),
U.S. Marine Corps.

NMCM 98 00976.

U.S. Navy–Marine Corps Court
of Criminal Appeals.

Sentence Adjudged 13 Jan. 1998.

Decided 11 March 1999.

LCDR Michael J. Wentworth, JAGC, USN, Appellate Defense Counsel.

Maj Troy D. Taylor, USMC, Appellate Government Counsel.

Before DORMAN, Senior Judge, and TROIDL and ROLPH, Appellate Military Judges.

ROLPH, Judge:

At the conclusion of his mixed plea case before a military judge sitting as a general court-martial, the appellant was convicted, in accordance with his pleas, of using provoking words and gestures, assault and battery upon LCpl H, and two specifications of drunk and disorderly conduct in violation of Articles 117, 128, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 917, 928, and 934 (1994). Contrary to his pleas, the appellant was also found guilty of a conspiracy to assault LCpl H and of the aggravated assault upon LCpl M [1] in violation of Articles 81 and 128, UCMJ. The approved sentence includes confinement for 18 months, forfeiture of $600 pay per month for 18 months, reduction to E–1, and a bad-conduct discharge.

We have carefully reviewed the record of trial, the appellant's two assignments of error, and the Government's response. We conclude that the findings and sentence are correct in law and fact and that no error materially prejudicial to the substantial rights of the appellant was committed. Arts. 59(a) and 66(c), UCMJ.

### The Conspiracy Charge

The appellant first contends that the evidence presented at his general court-martial was factually and legally insufficient to prove beyond a reasonable doubt that he and his co-accused, LCpl Hoover, entered into an agreement to assault LCpl H before the assault actually took place in the appellant's barracks room.[2] Appellant's brief of 3 Nov 1998 at 5.

The facts surrounding this event are not in significant dispute (largely the result of appellant having videotaped the assault). The appellant was assigned to a unit in Okinawa, and resided in the barracks located on board Camp Hansen. During the weekend of 16–17 August 1997, a typhoon swept across Okinawa and all Marines on Camp Hansen were instructed to remain within their barracks. In anticipation of a lengthy "lock down," many of the individuals residing in the barracks purchased large quantities of alcohol, including the appellant and his friends.

The testimony of various witnesses established that the appellant and his friends began drinking in the appellant's room at approximately noon on 16 August 1997, and continued drinking into the night. LCpl Hoover, the appellant's friend (and co-accused), testified that the five Marines who congregated in the appellant's room were drinking, listening to music, and "being loud." Record at 261. As the party wore on into the evening, LCpl Hoover left to retrieve some compact music discs from his room. In the hallway of the barracks, LCpl Hoover encountered LCpl H, a Marine with whom he had previously had a falling out, but their differences had, ostensibly, been subsequently resolved. He invited LCpl H to join the

---

1. The appellant originally pled guilty to the lesser included offense of assault consummated by a battery upon LCpl M. The Government went forward and proved the greater offense of aggravated assault.

2. The elements of conspiracy are:
   (1) That the accused entered into an agreement with one or more persons to commit an offense under the code; and
   (2) That, while the agreement continued to exist, and while the accused remained a party to the agreement, the accused or at least one of the co-conspirators performed an overt act for the purpose of bringing about the object of the conspiracy.
   MANUAL FOR COURTS-MARTIAL, UNITED STATES (1998 ed.), Part IV, ¶ 5b.

party in the appellant's room. LCpl H stated he would come up later.

Upon returning to the appellant's room, LCpl Hoover announced to the group that he had invited LCpl H to the party, and he was "going to get him" when he arrived. The appellant, who heard LCpl Hoover's comment, stated, "Yeah, bring him in here," or words to that effect. Cpl Brumfield, another Marine present at the party, testified that he interpreted LCpl Hoover's comment to mean LCpl Hoover intended to "beat [LCpl H] up" and the appellant's response to mean he was "just like agreeing with [LCpl Hoover]." Record at 311. Cpl Brumfield testified that others in the room questioned LCpl Hoover's statement, saying, "I thought that [your disagreement] was over" and "that you guys were friends now." LCpl Hoover responded, "Aw, I a'int gonna do nothing to him; I'm just playing. We cool." or words to · that effect. Record at 316. LCpl Hoover then left again to get LCpl H and bring him to the party. He returned approximately five minutes later and stated to the group, "H is on his way." LCpl H arrived minutes later.

The appellant had a videotape recorder and videotaped the events taking place in his room that evening. Prosecution Exhibit 1. When LCpl H arrived, LCpl Hoover can be seen on the videotape giving the appellant a "thumbs up" signal (held against his chest) and nodding. When LCpl H demonstrated a reluctance to speak into the video-camera, LCpl Hoover confronted him ["getting all mad" and bringing up their "old stuff"] and asked him, "why are you disrespecting my boy's (appellant's) room and his camera?" Record at 316. Prosecution Exhibit 1 shows LCpl Hoover pushing LCpl H and commanding him in an angry voice to "get on the fucking camera, dog!" LCpl H then stood up and faced the camera. On the videotape, LCpl Hoover can be seen standing behind LCpl H and gesturing toward the appellant and the others present. LCpl Hoover made a fist with one hand and rubbed it into his other open hand, then gave a second "thumbs up" signal to the appellant. He testified that his intent in doing so was to let the appellant and the others know "it [the assault] was about to happen, that I was going to get

him." Record at 265. The appellant then passed off the video-camera to another Marine and walked over to LCpl H. Words were exchanged and the appellant bumped chests with LCpl H, stating, "You're about my size." Moments later, both LCpl Hoover and the appellant began raining blows and kicks upon LCpl H. After being beaten and kicked, LCpl H escaped out the door when others in the room momentarily restrained his attackers.

■ The test for legal sufficiency is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *United States v. Turner*, 25 M.J. 324 (C.M.A.1987). When applying this test, we are bound to draw every reasonable inference from the record in favor of the prosecution. *United States v. McGinty*, 38 M.J. 131 (C.M.A.1993)

■ The test for factual sufficiency is "whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses ... [we are] convinced of the accused's guilt beyond a reasonable doubt." *Turner*, 25 M.J. at 325. *See* Article 66(c), UCMJ.

■ Our review of the record of trial and the graphic videotape depicting the vicious assault in question clearly convinces us that the evidence was both legally and factually sufficient to establish that the appellant and LCpl Hoover had formed an agreement to assault LCpl H before the event took place.

> The agreement in a conspiracy need not be in any particular form or manifested in any formal words. It is sufficient if the minds of the parties arrive at a common understanding to accomplish the object of the conspiracy, and this may be shown by the conduct of the parties. The agreement need not state the means by which the conspiracy is to be accomplished or what part each conspirator is to play.

MANUAL FOR COURTS-MARTIAL, UNITED STATES (1998 ed.), Part IV, ¶ 5c(2); *United States v.*

*Jackson,* 20 M.J. 68 (C.M.A.1985). "The agreement need not be expressed but need only be implied to sustain a finding of guilty." *United States v. Matias,* 25 M.J. 356, 362 (C.M.A.1987). The existence of a conspiracy is generally established by circumstantial evidence and is usually manifested by the conduct of the parties themselves. *Id.*

█ In this case, we find more than abundant evidence in the record demonstrating that there was a conspiratorial agreement between the appellant and LCpl Hoover to assault LCpl H, and that the actual assault was executed in furtherance of that agreement. This agreement was express, and was also clearly implied by the conduct of appellant and LCpl Hoover. When LCpl Hoover informed the group that he had invited LCpl H to the party, and that he was "going to get him," the evidence of record clearly indicates that those present, including the appellant, interpreted his comments to mean that he was going to "beat up" LCpl H. The appellant immediately responded, "Yeah, bring him in here," or words to that effect, indicating his agreement with Hoover's plan. The videotape itself provides the best evidence that an agreement existed. LCpl Hoover is depicted leaving the room to go get LCpl H. Minutes later he returned and announced to the group, "on his way," or words to that effect, indicating LCpl H was coming. The appellant then can be heard to state, "He's coming up ... that's all good to go."

After LCpl H arrived, two separate and clandestine "thumbs up" signals were made by LCpl Hoover toward the appellant. The second is most telling, and more than confirms the existence of their conspiratorial agreement. LCpl Hoover, standing behind LCpl H but facing toward appellant and the camera, rubbed his right fist into his left hand, and then gave appellant the second "thumbs up" signal. Immediately, the appellant passed off the video-camera to another, walked over and bumped chests with LCpl H, and challenged him by stating, "You're about my size." Simultaneously, appellant and LCpl Hoover began striking and kicking LCpl H.

Based upon our careful and thorough review of the record of trial, we are more than satisfied that any rational trier of fact could have found beyond a reasonable doubt that a conspiratorial agreement to assault LCpl H was formed. Also, we are ourselves personally convinced of the accused's guilt beyond a reasonable doubt. Accordingly, this assignment of error is without merit.

## The Drunk and Disorderly Offenses

The appellant's second assignment of error challenges the sufficiency of the providence inquiry in regard to the appellant's two drunk and disorderly conduct offenses. Charge V, specifications 1 and 2. At issue is the military judge's inquiry into the charged allegation that appellant's drunk and disorderly conduct on these two occasions was "of a nature to bring discredit upon the armed forces." At most, the appellant believes the inquiry only established that his conduct on these occasions was "to the prejudice of good order and discipline in the armed forces." As regards the offense of drunk and disorderly conduct in violation of Article 134, UCMJ, the distinction is a significant one.

Drunk and disorderly conduct which is to the prejudice of good order and discipline in the armed forces authorizes a maximum permissible punishment of confinement for 3 months and forfeiture of two-thirds pay per month for 3 months. If similar conduct is under circumstances that bring discredit upon the military service, the maximum punishment is confinement for 6 months and forfeiture of two-thirds pay per month for 6 months. M.C.M., Part IV, ¶ 73e(3)(b) and (c). Thus, as a sentence escalator in drunk and disorderly offenses, pleading and proving service discrediting conduct doubles the permissible punishment. Accordingly, unlike most offenses under Article 134, UCMJ, "conduct of a nature to bring discredit upon the armed forces" must be specifically pled and proved in drunk and disorderly specifications to authorize the greater maximum punishment. *Id.,* ¶ 73c(3).

█ A military judge may not accept a guilty plea to an offense without inquiring into its factual basis. *United States v. Care,* 18 U.S.C.M.A. 535, 40 C.M.R. 247 (1969); Art. 45(a), UCMJ. Before accepting a guilty plea, the military judge must explain the

elements of the offense and ensure that a factual basis for the plea exists. *United States v. Faircloth*, 45 M.J. 172, 174 (1996); *United States v. Davenport*, 9 M.J. 364, 367 (C.M.A.1980). "Mere conclusions of law recited by the accused are insufficient to provide a factual basis for a guilty plea." *United States v. Outhier*, 45 M.J. 326, 331 (1996)(citing *United States v. Terry*, 21 U.S.C.M.A. 442, 45 C.M.R. 216 (1972)). The accused "must be convinced of, and able to describe all the facts necessary to establish guilt." RULE FOR COURTS-MARTIAL 910(e), Discussion, MANUAL FOR COURTS-MARTIAL, UNITED STATES (1998 ed.). Acceptance of a guilty plea requires the accused to substantiate the facts that objectively support his plea. *Id.*; *United States v. Schwabauer*, 37 M.J. 338, 341 (C.M.A.1993). The standard of review to determine whether a plea is provident is whether the record reveals a substantial basis in law or fact for questioning the plea. *United States v. Prater*, 32 M.J. 433, 436 (C.M.A.1991).

■ We hold that the military judge's inquiry into the factual basis for the appellant's plea of guilty to "service discrediting" conduct was sufficient in regard to both specifications alleging drunk and disorderly conduct.

Article 134, UCMJ, punishes "disorders and neglects to the prejudice of good order and discipline in the armed forces" (clause 1) and "conduct of a nature to bring discredit upon the armed forces" (clause 2). MCM, Part IV, ¶ 60c(2) and (3). Clause 2 offenses under Article 134 specifically punish "conduct which has a tendency to bring the service into disrepute or which tends to lower it in public esteem." *Id.*, ¶ 60c(3). The gravamen of any "clause 2" offense is its service discrediting circumstances. *United States v. Lowe*, 4 U.S.C.M.A. 654, 16 C.M.R. 228, 232 (1954); *United States v. Chambers*, 31 M.J. 776, 777–778 (A.C.M.R.1990). The appellant incorrectly asserts that there is nothing in his record of trial that indicates that his drunk and disorderly conduct in the barracks on board Camp Hansen, Okinawa, brought the armed forces into disrepute or lowered it in public esteem. After being properly informed by the military judge of the definition of service discrediting conduct, the appellant agreed during the providence inquiry that his conduct was indeed "service discrediting." While more facts could have been elicited by the military judge to clarify and support this conclusion, we are satisfied that the appellant's pleas in this regard were provident. Specifically, the appellant admitted that provoking and assaulting LCpl H in the presence of several other Marines, then committing an aggravated assault on LCpl M, and videotaping both incidents on separate occasions while highly intoxicated was conduct that would tend to bring the service into disrepute or lower it in public esteem. Record at 221–244.

■ The appellant pled guilty in this case and expressly waived all possible factual issues concerning his guilt to the offenses to which he was pleading guilty. R.C.M. 910(j); *United States v. Wilson*, 44 M.J. 223, 225 (1996). Moreover, post-trial speculation as to a putative defense is an improper basis to upset voluntary guilty pleas that were preceded by a providence inquiry that is regular on its face. *Wilson*, 44 M.J. at 225. We hold that, on this record, no substantial question is raised in law or fact as to the validity of the appellant's guilty pleas to both drunk and disorderly offenses, and we cannot discern any error prejudicial to the substantial rights of the appellant. R.C.M. 910(j); Article 59, UCMJ.

We are completely satisfied that the appellant's responses during the providence inquiry were sufficient to establish his guilt of both offenses under "Clause 2" of Article 134, UCMJ.

### Conclusion

Accordingly, the findings and sentence as approved on review below are affirmed.

Senior Judge DORMAN and Judge TROIDL concur.