UNITED STATES, Appellee

v.

Justin R. FISHER, Specialist
U.S. Army, Appellant

No. 03-0059

Crim. App. No. 20000024

United States Court of Appeals for the Armed Forces

Argued April 29, 2003

Decided June 17, 2003

ERDMANN, J., delivered the opinion of the Court, in which
CRAWFORD, C.J., GIERKE and EFFRON, JJ., and COX, S.J.,
joined.  BAKER, J., took no part in the consideration or
decision of the case.


<u>Counsel</u>

For Appellant:  <u>Captain Gregory M. Kelch</u> (argued); <u>Colonel
    Robert D. Teetsel</u>, <u>Lieutenant Colonel E. Allen Chandler</u>,
    <u>Jr.</u> and <u>Major Imogene M. Jamison</u> (on brief).

For Appellee:  <u>Captain Charles C. Choi</u> (argued); <u>Colonel
    Lauren B. Leeker</u>, <u>Lieutenant Colonel Margaret B. Baines</u>
    and <u>Major Mark L. Johnson</u> (on brief).


Military Judge:  Kenneth D. Pangburn

<u>THIS OPINION IS SUBJECT TO EDITORIAL CORRECTION BEFORE FINAL PUBLICATION</u>.

Judge ERDMANN delivered the opinion of the Court.

Appellant, Specialist Justin R. Fisher, was tried by general court-martial at Fort Campbell, Kentucky. Pursuant to his pleas he was convicted of two specifications of obstruction of justice, one specification of providing alcohol to a minor, and three specifications of false swearing, all in violation of Article 134 of the Uniform Code of Military Justice [hereinafter UCMJ], 10 U.S.C. § 934 (2000). Appellant was sentenced by a military judge to a dishonorable discharge, confinement for 14 years, forfeiture of all pay and allowances, and reduction to the lowest enlisted grade (E-1). Pursuant to a pretrial agreement, the convening authority reduced the term of confinement to 150 months (12.5 years), but otherwise approved the sentence as adjudged. The Army Court of Criminal Appeals summarily affirmed the findings of guilty and the sentence.

We granted review of the following issue pursuant to Article 67(b), UCMJ, 10 U.S.C. § 867(b) (2000):

> WHETHER APPELLANT'S PLEA OF GUILTY TO SPECIFICATION 5 OF CHARGE III IS PROVIDENT WHERE THE ALLEGEDLY FALSE STATEMENT WAS INFORMATION OMITTED FROM AN OTHERWISE LITERALLY TRUE STATEMENT TO THE CID.

We hold that the statement at issue in specification 5 of Charge III contained literally false assertions and thus Appellant's guilty plea was provident. In light of that disposition, we do not reach the issue of whether a plea of

guilty to the offense of false swearing can be provident where the statement is only false by omission.

FACTS

Appellant's convictions arose out of circumstances involving the murder of his roommate by a fellow service member.

At about midnight on July 3, 1999, Appellant, Private (PVT) Calvin Glover, Private First Class (PFC) Arthur Hoffman, and PFC Barry Winchell were relaxing in front of their barracks. Private Glover was telling stories about how he used to take drugs, deal drugs, and rob banks before he came into the military. All were drinking beer except PFC Hoffman. Eventually, PFC Winchell told PVT Glover to "take [his] drunk, cherry ass to bed."

Humiliated by this put-down, PVT Glover tried to confront PFC Winchell, indicating he wanted to fight, and trying several times to knock the beer out of PFC Winchell's hand. Private First Class Winchell hit PVT Glover three or four times in the face, threw him to the ground and easily subdued him. Private Glover did not succeed in landing any blows on PFC Winchell.

The Staff Duty Noncommissioned Officer (SDNCO) walked by, and PFC Hoffman and Appellant separated the two combatants. Private First Class Winchell and PVT Glover shook hands in front of the SDNCO to show that the fight was over. Private First Class Winchell said repeatedly to PVT

Glover, "It's cool, right?" Private Glover responded, "No, it's not cool. It ain't over. I will f**king kill you. We ain't through."

After the fight, PVT Glover said to Appellant and PFC Hoffman, "I won't let a faggot kick my ass." Appellant, PFC Hoffman and PVT Glover were all aware of a rumor that PFC Winchell was gay.

The following day, Appellant repeatedly taunted PVT Glover about losing a fistfight to "a faggot." That night, Appellant gave the underage PVT Glover beer and continued to bait him while the two drank in PVT Glover's room. Sometime after 1:15 a.m. Appellant and PVT Glover left PVT Glover's room and walked to Appellant's room, passing by PFC Winchell who was sleeping on a cot located outside the doorway to the room shared by PFC Winchell and Appellant.

After arriving at Appellant's room, Appellant turned on his compact disk player and played the soundtrack from "Psycho." Private Glover picked up Appellant's wooden baseball bat and began making chopping motions while mumbling to himself. Private Glover had a wide-eyed, psychotic look on his face and Appellant heard him repeatedly mumble the word "faggot." Private Glover continued walking around swinging the bat for about ten minutes and then told Appellant he wanted to "f**k up" PFC Winchell. Appellant told PVT Glover to "go for it."

Private Glover left the room and mortally wounded PFC Winchell by hitting him in the head and neck multiple times

4

with the baseball bat as he lay on his cot.  Private Glover then returned to the room, announced he had "whooped [PFC Winchell's] ass," and secured Appellant's assistance in washing blood off the bat.

Appellant subsequently pretended not to know what had happened and tried to cover up the true course of events. In the course of the investigation, Appellant made several written statements under oath to the U.S. Army Criminal Investigative Command (CID).  Appellant was charged with false swearing in regard to three of these statements. Appellant pleaded guilty to all three of the false swearing specifications.  Only the third false statement is at issue on appeal.

The following statement formed the basis for the false swearing conviction of specification 5 of Charge III: "[T]hen he [PVT Glover] walked over to Winchell's side of the room, and shortly thereafter I hear the room door shut. I did not think anything of it, I assumed Glover went home. I did not think anything of it until he came back[.]"

Specifications 3 through 5 all dealt with false swearing, and the military judge explained the elements of the offense at one time.  He then undertook a specific inquiry as to each specification.  In regard to specification 5 the record reflects the following exchange between the military judge (MJ) and Appellant (ACC):

> MJ:  There it says, that on or about the 8th of July, in a written sworn statement, you did wrongfully and unlawfully make, under lawful oath, a

false statement in substance as follows: "then he" - - is that referring to Glover?

ACC: Yes, sir.

. . . .

MJ: He walked over to Winchell's side of the room, shortly thereafter you hear the door shut. This was part of the false statement; right?

ACC: Yes, sir.

MJ: You hear the door shut. You did not think anything of it. You assumed that Glover went home. So, this is one of those false statements by omission; is that right?

ACC: Yes, sir.

MJ: You didn't say anything about Glover's statement that he wanted to f**k him up.

ACC: Yes, sir.

MJ: That he intended to assault him.

ACC: Yes, sir.

MJ: So, that's what makes this statement false?

ACC: Yes, sir.

. . . .

MJ: Those are the statements you allegedly made in each of these three specifications. Are you clear on those?

ACC: Yes, sir.

MJ: Now, the next element, the fifth element is that those statements were false. You've already indicated to me that you believe that those statements were false. Is that right?

ACC: Yes, sir.

> MJ:  The sixth element is, that at the time that you made the statements, you did not then believe those statements were to be true.
>
> ACC: Yes, sir.
>
> MJ:  Now, the time you made any of these statements to CID, you were trying to cover for yourself.  Is that right?
>
> ACC: Yes, sir.
>
> MJ:  When you made those statements, did you believe them to be true at the time you made them?
>
> ACC: No, sir.
>
> MJ:  You knew they were false when you made them?
>
> ACC: Yes, sir.
>
> .  .  .  .
>
> MJ:  Tell me about Specification 5.
>
> ACC: In Specification 5, I didn't admit that I teased him [PVT Glover] and, you know, had a conversation with him in the room.  He did not walk over to Winchell's side of the room.  He walked out with the bat.  I knew that statement was false and I still gave it any way [sic], Your Honor.

(Emphasis added.)

In addition to the providence inquiry, Appellant's guilty plea was based upon a stipulation of fact that he entered into on January 7, 2000.  In that stipulation Appellant agreed to the following concerning the statement that was the subject of specification 5:

> This statement was false and the accused did not then believe the statement to be true when he made his oath and signed and swore it to be the truth.  Furthermore, this lie under oath was,

under the circumstances, prejudicial to the good order and discipline in the armed forces and of a nature to bring discredit upon the armed forces. Specifically this statement was not true(and the accused knew it not to be true when made) because the accused knew that PVT Glover left the room with the bat after saying he should go out there and "f\*\*k [Winchell] up" and after the accused said "then go for it[.]"

## DISCUSSION

Appellant argues on appeal that his guilty plea as to specification 5 of Charge III was improvident. Under Article 45, UCMJ, 10 U.S.C. § 845 (2000), if an accused appears to enter a plea improvidently or through lack of understanding of its meaning or effect, the plea shall not be accepted by the court. Rejection of a guilty plea on appellate review requires that the record of trial show a substantial basis in law and fact for questioning the guilty plea. United States v. Jordan, 57 M.J. 236, 238 (C.A.A.F. 2002)(citing United States v. Prater, 32 M.J. 433, 436 (C.M.A. 1991)).

The statement that was the subject of specification 5 contained five separate assertions:

1. [T]hen he [Glover] walked over to Winchell's side of the room,
2. and shortly thereafter I hear the room door shut.
3. I did not think anything of it,
4. I assumed Glover went home.
5. I did not think anything of it until he came back[.]

The record reflects that this statement contains literally false assertions and is also false by omission.

8

Appellant argues that the UCMJ offense of "false swearing" does not include statements that are "false by omission." Since the military judge referenced "false statements by omission" during his plea inquiry into specification 5, Appellant urges that the resulting plea was not provident. The Government counters that Appellant did not merely omit facts or give unresponsive answers in the statement, but made literally false statements.

While Appellant admitted that the statement was false by omission, his responses to the military judge's questions reflect that he was also aware that much of what he said was literally false. In response to multiple questions from the military judge, Appellant admitted that the statements were false and that when he made them he did not believe them to be true. When the military judge asked Appellant about specification 5, Appellant concluded his response by stating that "I knew that statement was false and I still gave it any way [sic], Your Honor."

In addition to these general admissions of falsity, Appellant specifically admitted the falsity of two of the separate assertions in the statement. When explaining to the military judge why specification 5 was false, Appellant expressly admitted the falsity of the first assertion, that "he [PVT Glover] walked over to Winchell's side of the room." During the plea inquiry Appellant clearly stated, "He [PVT Glover] did not walk over to Winchell's side of the room." (Emphasis added.)

Appellant also admitted in his stipulation of fact the falsity of the fourth assertion, that when PVT Glover left the room he thought that PFC Glover was going home. Because PVT Glover took the baseball bat and told Appellant he was going to "f**k him [PFC Winchell] up" and Appellant said "then go for it," Appellant knew that PVT Glover was not going home when he left the room. An admission in a stipulation of fact is binding and may not be contradicted. See Rules for Courts-Martial 811(e)(unless withdrawn or stricken, stipulation of fact is binding on court-martial and may not be contradicted by the parties).

There is however some question as to whether the record is sufficient to support the falsity of Appellant's specific assertion that he heard the room door shut. When discussing that assertion, the military judge said, "He [PVT Glover] walked over to Winchell's side of the room, shortly thereafter you hear the door shut. This was part of the false statement; right?" to which Appellant responded, "Yes, sir." Without more, it is unclear whether Appellant was only agreeing that the assertion regarding hearing the door shut was an assertion which formed a part of the false statement (without making any comment on the truth of that assertion), or was in fact admitting that that assertion was itself false.

Similarly, beyond Appellant's general admissions regarding the falsity of his statement, there is nothing on the record that directly supports the literal falsity of

United States v. Fisher, No. 03-0059/AR

Appellant's third and fifth assertions that when PVT Glover left "he did not think anything of it" and "he did not think anything of it until he [PVT Glover] came back." The military judge only characterized those assertions as "false statements by omission," and Appellant did not admit that the assertions were literally false.

It is not necessary that a statement be false in every detail in order for a guilty plea to false swearing to be provident. The gist of the crime of false swearing is that an oath to tell the truth has been knowingly violated. A statement need not be false in its entirety. United States v. Kennedy, 12 M.J. 620, 624 (N.M.C.M.R. 1981), pet. denied, 13 M.J. 199 (C.M.A. 1982).

The difficulty with the plea inquiry into this specification was the military judge's reference to "false statements by omission." Failure to explain each and every element of the charged offense to the accused in a clear and precise manner prior to accepting the plea is not reversible error if it is clear from the entire record that the accused knew the elements, admitted them freely, and pleaded guilty because he was guilty. United States v. Jones, 34 M.J. 270, 272 (C.M.A. 1992). Here, despite the reference to "false by omission," there were also multiple literal falsehoods. It is clear from the entire record that the Appellant knew that he was accused of making a false statement, referenced the falsity of the statement in his stipulation of fact and in

11

response to the military judge's questions, and voluntarily pleaded guilty because he was guilty.

A guilty plea will be set aside on appeal only if the appellant can show a "substantial basis" in law and fact to question the plea. Jordan, 57 M.J. at 238. We find that there is no substantial basis in law or fact for questioning the providence of Appellant's guilty plea.

## DECISION

The decision of the United States Army Court of Criminal Appeals is affirmed.