# UNITED STATES NAVY–MARINE CORPS COURT OF CRIMINAL APPEALS

―――――――――――――

## No. 201700019

―――――――――――――

## UNITED STATES OF AMERICA
Appellee

v.

## WILLIAM H. RUSCH
Aviation Support Equipment Technician Airman Apprentice (E-2),
U.S. Navy
Appellant

―――――――――――――

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judge: Commander Jonathan T. Stephens, JAGC, USN.
Convening Authority: Commanding Officer, Training Support
Center, San Diego, California.
Staff Judge Advocate's Recommendation: Lieutenant Junior Grade
Stacy E. Saxon, JAGC, USN.
For Appellant: Commander Suzanne M. Lachelier, JAGC, USN.
For Appellee: Captain Brian L. Farrell, USMC; Lieutenant James
M. Belforti, JAGC, USN.

―――――――――――――

Decided 31 July 2017

―――――――――――――

Before CAMPBELL, FULTON, and HUTCHISON, *Appellate Military
Judges*

―――――――――――――

**This opinion does not serve as binding precedent, but may be cited
as persuasive authority under NMCCA Rule of Practice and
Procedure 18.2.**

―――――――――――――

CAMPBELL, Senior Judge:

At an uncontested special court-martial, a military judge convicted the
appellant of escape from custody and wrongful use and introduction onto a
military base of marijuana–violations of Articles 95 and 112(a), Uniform Code

of Military Justice (UCMJ), 10 U.S.C. §§ 895 and 912a (2016). The military judge sentenced the appellant to six months' confinement, reduction to the pay grade of E-1, and a bad-conduct discharge. The convening authority approved the adjudged sentence and, pursuant to a pretrial agreement, suspended confinement in excess of ninety days.

In his sole assignment of error, the appellant contends his guilty plea to escape from custody is legally insufficient based on his providency inquiry colloquy about being apprehended by Mr. P, a civilian who lacked the legal authority to apprehend him. Having carefully considered the record of trial and the parties' submissions, we find no issue of law or fact providing a substantial basis to question the providency of the appellant's guilty plea. We affirm the findings and sentence. Arts. 59(a) and 66(c), UCMJ.

## I. BACKGROUND

As his brig chasers sat feet away in a waiting area, the appellant left a patient examination room and walked out the back door of an on-base medical clinic during his pre-confinement physical. The government alleged the appellant violated Article 95, UCMJ, in those actions by breaking arrest. Pursuant to a pretrial agreement, however, the appellant pleaded guilty, by exceptions and substitutions, to the greater offense of escape from custody. The agreed upon language to which he pleaded guilty included "escape from the custody of Chief [R] and Petty Officer [S], persons authorized to apprehend the accused."[1]

## A. The stipulation of fact regarding the appellant's apprehension

The appellant stipulated to the following facts regarding the incident:

> . . . On or about 14 July 2016, I was called down to the legal office of Training Support Center San Diego (TSC) by [Mr. P], a civilian who works in the legal office of TSC. [Mr. P] told me that the Commanding Officer [CO] had ordered me to go to Naval Branch Health Clinic (NBHC) . . . to undergo a physical examination in anticipation of pre-trial confinement. I was escorted to NBHC San Diego by [Chief R and Petty Officer S].

> . . . I knew I had a lawful duty to be physically present . . . *under the apprehension of both* [*Chief R and Petty Officer S*] because [Mr. P] told me that *they were both ordered by my [CO]* to take me to the health clinic, and that they were instructed by the [CO] that I was not to leave . . . without permission from either [Chief R or Petty Officer S].

---

[1] Record at 21-22; Appellate Exhibit III at 5.

. . . [Mr. P] also told me that I needed to remain in [Chief R and Petty Officer S]'s custody even after the completion of my physical examination, per the [CO]'s orders. Specifically, I was told by [Mr. P] that I was not to leave the health clinic on my own and *had to remain in their custody* after my physical . . . .

. . . While at NBHC San Diego, before the completion of my physical examination, I decided to leave the health clinic[.]

. . . I knew that I could have requested permission from either [Chief R or Petty Officer S] to leave . . . but I chose not to. . . .[2]

The appellant and counsel for both parties signed the stipulation of fact, stating "the facts contained within this document are true" and that "the appellate courts may use it when reviewing the case for . . . legal error . . . ."[3] A pretrial agreement provision required the appellant to notify the trial counsel of objections to the stipulation of fact's admissibility prior to signing it. At trial, the appellant acknowledged having read and discussed the stipulation with his counsel, agreed that it was true, and agreed to the military judge's use of the stipulation in determining his guilt and sentence.

## B. The military judge's providence inquiry

Before the providence inquiry, the military judge explained that, in a RULES FOR COURTS-MARTIAL (R.C.M.) 802(b), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2016) conference, he and counsel for both parties had discussed "who, for the elements, the government and defense believed apprehended" the appellant, and "the general consensus was that it was [Mr. P] who was under orders from the [CO] of TSC."[4]

In defining the elements of escape from custody during the providence inquiry, the military judge mentioned neither Chief R nor Petty Officer S. Rather, the military judge explained the elements were that the appellant was "apprehended by [Mr. P] of the Training Support Center; [t]hat [Mr. P] was authorized to apprehend [him]; and [t]hat . . . on 14 July 2016, at or near San Diego, California, [the appellant] freed [him]self from the restraint of [Mr. P's] custody before being released therefrom by proper authority."[5] The military judge then explained that the appellant may "have reason to believe that [Mr. P] was lawfully empowered to hold [him] in custody when the

---

[2] Prosecution Exhibit (PE) 1 at 1-2 (emphasis added).

[3] *Id.* at 1.

[4] Record at 16.

[5] *Id.* at 30.

circumstances that were known to [him] would have caused a reasonable person in the same circumstances to believe that [he was] in lawful custody."[6]

When the military judge asked the accused if he was "in fact, apprehended," and "[b]y whom?," the appellant responded that Mr. P apprehended him by telling him "that the CO had directed me that I was going to be placed in pretrial confinement and I'd be accompanied by the two Petty Officers and so forth."[7] Responding to further questions, the appellant stated that he believed Mr. P, the "Legal Director," had authority to apprehend him and was relaying the CO's orders.[8] Asked if "Mr. [P] escort[ed] you to Medical," the appellant replied that Chief R and Petty Officer S escorted him to medical after placing him in handcuffs.[9] The appellant agreed "they were authorized to do that," and said, "I was supposed to be in *their . . . custody . . . .* Because [Mr. P] had directed them to be the brig chasers for putting me in pretrial confinement."[10] The appellant admitted that "the escorts" never released him "from custody," that they "were empowered to hold [him] in custody," and he "could have [gone] back to their custody" after his medical appointment.[11] The appellant said he knew Chief R and Petty Officer S as Sailors from his command, that "they were [his] escorts[,] and [he] had to listen to them."[12] Both counsel declined the military judge's offer to inquire further.

## II. DISCUSSION

### A. Providence of an appellant's plea

The appellant asserts his plea is legally insufficient because "he was not apprehended by someone with lawful authority to effect" his apprehension, meaning his plea failed to establish a "basic element" of an Article 95, UCMJ, offense.[13] This court reviews a military judge's decision to accept a guilty plea for an abuse of discretion, reversing only if the "record shows a substantial basis in law or fact for questioning the plea." *United States v. Moon*, 73 M.J. 382, 386 (C.A.A.F. 2014) (citation omitted).

---

[6] *Id.* at 31.

[7] *Id.* at 33.

[8] *Id.*

[9] *Id.* at 35, 37.

[10] *Id.* at 35-36 (emphasis added).

[11] *Id.* at 42-43.

[12] *Id.* at 36-37.

[13] Appellant's Reply Brief of 22 May 2017 at 1-2.

"[T]o establish an adequate factual predicate for a guilty plea, the military judge must elicit factual circumstances as revealed by the accused himself that objectively support that plea." *United States v. Jordan*, 57 M.J. 236, 238 (C.A.A.F. 2002) (citation and internal quotation marks omitted). "[W]e have not ended our analysis at the edge of the providence inquiry but, rather, looked to the entire record. . . . including the existence of and reference to the stipulation" of fact, to determine whether this predicate is established. *Id.* at 239. If "an accused sets up matter inconsistent with the plea . . . the military judge must either resolve the apparent inconsistency or reject the plea." *United States v. Garcia*, 44 M.J. 496, 498 (C.A.A.F. 1996) (citations and internal quotation marks omitted). However, "[f]ailure to explain each and every element of the charged offense to the accused in a clear and precise manner . . . is not reversible error" if the facts supporting each element exist in the record. *United States v. Fisher*, 58 M.J. 300, 304 (C.A.A.F. 2003) (citation omitted). Once the appellant admits "on the record that there is a factual basis for pleas of guilty," the "military judge is not required . . . to ferret out or negate all . . . potential inconsistencies." *United States v. Jackson*, 23 M.J. 650, 652 (N.M.C.M.R. 1986).

Indeed, our superior court has not required military judges to iron out every inconsistency between a stipulation of fact and the appellant's responses in the providence inquiry before accepting a plea. For example, in *United States v. Wimberly*, 42 C.M.R. 242 (C.M.A. 1970), the stipulation of fact for Wimberly's guilty plea to felony murder under Article 118, UCMJ, stated that, early in the investigation, he had told investigators an accomplice shot and killed the victim. *Id.* at 244. However, in the providence inquiry, Wimberly agreed with the military judge's statement that the "elements" of the appellant's felony murder offense included, *inter alia*, that the victim's "death resulted from [*Wimberly's*] act in shooting him with a pistol," and that the killing of the victim "*by* [*Wimberly*], was unlawful." *Id.* at 246 (emphasis added). The Court of Military Appeals credited the providence inquiry over the stipulation of fact—reasoning the military judge had "consider[ed] the reference" to the accomplice as merely "history of an alibi that was not being relied upon at trial," *id.* at 245—and found Wimberly's guilty plea provident in spite of this apparent inconsistency, because "[n]othing in the stipulation negatives [Wimberly's] guilt of the offense." *Id.*

On other occasions, our superior court has credited the stipulation of fact over the providency inquiry. In *Fisher*, the Court of Appeals for the Armed Forces (CAAF) reviewed a guilty plea to a specification of false swearing in violation of Article 134, UCMJ, in connection with a murder committed by Private G. Fisher had stated under oath that before the murder, Private G had "walked over to [the victim]'s side of the room, and shortly thereafter I hear [sic] the room door shut. I did not think anything of it, I assumed

[Private G] went home. I did not think anything of it until he came back." 58 M.J. at 302. At trial, the appellant entered into a stipulation of fact regarding that account:

> This statement was false and the accused did not then believe the statement to be true . . . . Specifically this statement was not true . . . because the accused knew that [Private G] left the room with the bat after saying he should go out there and "f**k [the victim] up" and after the accused said "then go for it[.]"

58 M.J. at 303 (fifth alteration in original). However, the military judge focused the plea inquiry on whether these statements were "false statements by omission," before asking about the literal falsity of other statements:[14]

> MJ: You hear the door shut. You did not think anything of it. You assumed that [Private G] went home. So, this is one of those *false statements by omission*; is that right?
>
> ACC: Yes, sir.
>
> MJ: *You didn't say anything* about [Private G]'s statement that he wanted to f**k him up. . . . That he intended to assault him.
>
> ACC: Yes, sir.
>
> MJ: So, that's what makes this statement false?
>
> ACC: Yes, sir.

*Id.* at 302 (emphasis added). Though "the military judge's reference to 'false statements by omission'" was a "[f]ailure to explain each and every element of the charged offense to the accused in a clear and precise manner prior to accepting the plea," the CAAF nevertheless found Fisher's plea to the "literal falsity" of these statements provident. *Id.* at 303-04. For several of the statements, it relied on the stipulation of fact to reach this conclusion:

> [Fisher] admitted in his stipulation of fact the falsity of the fourth assertion, that when [Private G] left the room he thought that [Private G] was going home. Because [Private G] took the baseball bat and told [Fisher] he was going to "f**k

---

[14] Although *Fisher* did not decide whether the false statements by omission described by the military judge are punishable under the UCMJ, 58 M.J. at 301, other authorities suggest they are not. *See, e.g., United States v. Purgess*, 33 C.M.R. 97, 98 (C.M.A. 1963) (finding Purgess' statement that the goods the government alleged he stole "came from a German concern" was literally true, and thus "insufficient in law to establish accused's guilt of false swearing," even though he omitted that the goods also came "by way of Government purchase, [and] stocking" before his "theft therefrom").

> [the victim] up" and [Fisher] said "then go for it," [Fisher] knew that [Private G] was not going home when he left the room. An admission in a stipulation of fact is binding . . . .
>
> . . . .
>
> . . . . [D]espite the reference to "false by omission," there were also multiple literal falsehoods. It is clear from the entire record [that Fisher] knew that he was accused of making a false statement, referenced the falsity of the [above] statement[s] in his stipulation of fact and [the falsity of other statements] in response to the military judge's questions, and voluntarily pleaded guilty because he was guilty.

*Fischer*, 58 M.J. at 303-04.

**B. Application to this escaping from custody guilty plea**

For a military judge to accept a guilty plea to a violation of Article 95, UCMJ, by escaping from custody, the record must show:

(a) That a certain person apprehended the accused;

(b) That said person was authorized to apprehend the accused; and

(c) That the accused freed himself or herself from custody before being released by proper authority.

MANUAL FOR COURTS-MARTIAL (MCM), UNITED STATES (2016 ed.), Part IV, ¶ 19b(4). Regarding the second element, a civilian may apprehend an accused only if the civilian is a law enforcement officer, and the accused is a "deserter from the armed forces." R.C.M. 302(b)(3). There being no evidence in the record that Mr. P was a law enforcement officer, or that the appellant was a deserter, the leading questions by the military judge to which the appellant agreed—that he was "apprehended by [Mr. P]," who "was authorized to apprehend you"—do not "establish an adequate factual predicate for a guilty plea" to the charge of escape from custody. *Jordan*, 57 M.J. at 238.

Changing the individual alleged to have apprehended an accused (the "custodian") can create fatal variance at a contested trial. *United States v. Marshall*, 67 M.J. 418, 421 (C.A.A.F. 2009). However, the identity of the custodians in this specification—Chief R and Petty Officer S—did not change after the appellant pleaded guilty, by exceptions and substitutions, to an escaping custody specification instead of the breaking arrest specification referred to trial. In the first element of the substituted offense, apprehension is "the taking of a person into custody." R.C.M. 302(a)(1). Custody is the "restraint of free locomotion imposed by lawful apprehension. The restraint may be physical or, once there has been a submission to apprehension or a forcible taking into custody, it may consist of control exercised in the presence

of the prisoner by official acts or orders." MCM, Part IV, ¶ 19c(4)(a). For the second element, all petty and noncommissioned officers—like the two here, whom the appellant knew as active duty members of his command—may apprehend an accused. R.C.M. 302(b)(1).

The appellant stipulated that he was "under the apprehension of both [Chief R] and Petty Officer [S]," and that Mr. P had simply advised the appellant to "remain in [their] custody . . . per the [CO]'s orders."[15] After the military judge's initially mistaken focus on Mr. P, the appellant admitted in the providence inquiry that: Chief R and Petty Officer S had placed handcuffs on him and escorted him out of the legal office; he was "in *their* custody;"[16] they were ten feet away or closer until the appellant escaped; that after removing the handcuffs they instructed him to remain in their custody; and they had never released him "from custody."[17] These admissions establish that Chief R and Petty Officer S apprehended the appellant, providing the factual predicate allowing the military judge to accept his plea.[18]

Neither the military judge's misstatement of fact that Mr. P apprehended the appellant, nor his erroneous legal explanation that Mr. P could do so, provides a substantial basis in law or fact to question the plea. The former error is a factual discrepancy between the providence inquiry and stipulation which, per *Wimberly*, does not "negat[e] the appellant's guilt of the offense,"

---

[15] PE 1 at 2. The appellant also alleges legal error in that Chief R and Petty Officer S "did not personally engage in any instruction to [the appellant] regarding the apprehension." Appellant's Brief of 5 April 2015 at 13 (citations omitted). Yet the appellant relies on the R.C.M. 304(d) requirement that an "order to an enlisted person" directing "pretrial restraint" must be "delivered personally by the authority who issues it or through other persons subject to the code." Apprehension is not a form of R.C.M. 304 pretrial restraint. In accordance with R.C.M. 302(d)(1), Mr. P's explanation, combined with Chief R and Petty Officer S handcuffing the appellant, "clearly notif[ied] the person to be apprehended that [he was] in custody." Although such "notice should be given orally or in writing . . . it may be implied by the circumstances." *Id*.

[16] Record at 35 (emphasis added).

[17] *Id*. at 41-42.

[18] The appellant avers that apprehension by Chief R and Petty Officer S was improper because "[t]hey did not have delegated authority" under R.C.M. 304(b) to "act . . . directly from the [CO]." Appellant's Brief at 13. This argument again improperly conflates apprehension with pretrial restraint and lacks merit since all petty and noncommissioned officers have independent authority to apprehend any person subject to trial by court-martial. Delegated authority is only necessary to *order pretrial restraint*, R.C.M. 304(b)(3)—and there are no indications that the Sailors even assumed that authority, as the appellant stipulated, "[Mr. P] told me that they were both ordered by my [CO] to take me to the health clinic." PE 1 at 2.

as established by the stipulation and the rest of the providence inquiry. 42 C.M.R. at 245. *Fisher* demonstrates that the latter error—failing to connect the facts underlying an offense to the proper elements—does not invalidate the appellant's plea, where the stipulation of fact sufficiently made those connections.

### III. CONCLUSION

The findings and sentence are affirmed.

Judge FULTON and Judge HUTCHISON concur.

For the Court



R.H. TROIDL
Clerk of Court