# UNITED STATES NAVY–MARINE CORPS COURT OF CRIMINAL APPEALS

———————————

### No. 201600368

———————————

### UNITED STATES OF AMERICA
Appellee

v.

### CHARLES A. TITMAN
Lance Corporal (E-3), U.S. Marine Corps
Appellant

———————————

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judge: Lieutenant Colonel Eugene H. Robinson, Jr., USMC.
Convening Authority: Commanding General,
Marine Corps Installations Pacific, Okinawa, Japan.
Staff Judge Advocate's Recommendation: Lieutenant Colonel Eric J.
Peterson, USMC.
For Appellant: Lieutenant Colonel Richard A. Viczorek, USMCR.
For Appellee: Lieutenant Commander Justin C. Henderson, JAGC,
USN; Lieutenant Taurean K. Brown, JAGC, USN.

———————————

Decided 29 September 2017

———————————

Before MARKS, JONES, and WOODARD, *Appellate Military Judges*

———————————

**This opinion does not serve as binding precedent but may be cited as persuasive authority under NMCCA Rule of Practice and Procedure 18.2.**

———————————

JONES, Judge:

A military judge sitting as a general court-martial convicted the appellant, pursuant to his pleas, of violating a lawful general order, a lawful general regulation, and a lawful order, making a false official statement, assault consummated by a battery, and drunk and disorderly conduct, in violation of Articles 92, 107, 128, and 134, Uniform Code of Military Justice

(UCMJ), 10 U.S.C. §§ 892, 907, 928, and 934 (2012). The military judge sentenced the appellant to 240 days' confinement, reduction to pay grade E-1, forfeiture of all pay and allowances, and a bad-conduct discharge. The convening authority (CA) approved the adjudged sentence and, except for the punitive discharge, ordered it executed.

The appellant asserts three assignments of error: (1) the trial counsel made improper argument in sentencing; (2) the military judge abused his discretion in accepting the appellant's guilty plea to the drunk and disorderly conduct charge; and (3) delay in the post-trial processing of the appellant's case warrants relief. We disagree and, finding no error materially prejudicial to the substantial rights of the appellant, affirm the findings and sentence. Arts. 59(a) and 66(c), UCMJ.

## I. BACKGROUND

The appellant and Lance Corporal (LCpl) EES were friends prior to joining the Marine Corps and both were assigned to Marine Corps Air Station, Iwakuni, Japan, for their first duty station. Their relationship turned romantic. On 26 September 2015, both began drinking with separate friends out in town. Later that evening they both ended up in the smoke pit outside the appellant's barracks, along with several other Marines including LCpl Dibble,[1] where the appellant continued to drink. Then LCpl EES, LCpl Dibble, and the appellant decided to gather at Private First Class (PFC) F and PFC C's room where they all drank rum from a bottle, while recording rap music. Hard liquor was prohibited in their barracks rooms. LCpl EES was the only female present and the only one not a military police officer.

At some point in the night, LCpl Dibble declared the party to be shirtless, and all present, with the exception of LCpl EES, removed their shirts. After some prodding, LCpl EES allowed LCpl Dibble and the appellant to help remove her sweatshirt, and then she took off her bra. LCpl EES then permitted the appellant, LCpl Dibble, and PFC C to put their mouths on her breasts and nipples. Unbeknownst to her and the appellant, PFC C recorded the events and subsequently showed it to several other Marines.

As the night progressed, LCpl EES became more intoxicated. Finally, she told the appellant she was feeling sick, so he and LCpl Dibble assisted her back to the appellant's barracks room. Shortly thereafter, LCpl EES had to vomit. As she knelt at the toilet, LCpl Dibble pulled her sweat pants low on her hips and pulled up her panties to create a picture for an album cover for the music he and the appellant wanted to produce. Then, the appellant and LCpl Dibble took turns touching LCpl EES's vagina. When LCpl EES

---

[1] LCpl Dibble was convicted of similar charges at a special court-martial.

realized what was happening, she cursed at them to stop, which they did. The appellant then placed LCpl EES in his bed where she slept the remainder of the night, again in contravention of barracks rules.

Some weeks later, the appellant became aware of PFC C's surreptitious recording and transmission of that recording to other Marines, but did not report the incident to the authorities. The day after finding out about the recording, he was interviewed by the Naval Criminal Investigative Service. When questioned, he lied regarding his knowledge of the video's existence, LCpl EES's drinking that night, and touching LCpl EES's vagina.

## II. DISCUSSION

### A. Improper sentencing argument

During the government's sentencing case, the appellant objected to the military judge considering his status as a military police officer as an aggravating factor. The military judge overruled the objection. The trial counsel later emphasized this aggravation during his sentencing argument:

> In fact, he abused her. He took her back, took advantage of the situation, and abused her with another male Marine. How—and he's a cop. How could it possibly be more aggravated than that situation? And, again, sir, these are facts that are in evidence. These are facts that the Court can and should consider under [RULE FOR COURTS-MARTIAL (R.C.M.) 1001, MANUAL FOR COURTS-MARTIAL, UNITED STATES (2016 ed.)]: The charges in this case, the conduct in this case, and the aggravating factors. He's law enforcement. He is expected to hold himself to a higher standard.[2]

The appellant objected that the argument was "not proper evidence in aggravation[.]"[3] The military judge did not explicitly rule on the objection but advised the trial counsel to proceed with his argument. The appellant avers, again on appeal, his "military occupational specialty (MOS) is not an aggravating factor in sentencing unless there is a rational nexus and factual support in the record between the appellant's conviction and his ability to work in his MOS."[4]

"Improper argument is a question of law that we review de novo." *United States v. Marsh*, 70 M.J. 101, 104 (C.A.A.F. 2011) (citing *United States v. Pope*, 69 M.J. 328, 334 (C.A.A.F. 2011)). "The legal test for improper

---

[2] Record at 138.

[3] *Id.*

[4] Appellant's Brief of 6 Feb 2017 at 8 (citations omitted).

argument is whether the argument was erroneous and whether it materially prejudiced the substantial rights of the accused." *United States v. Baer*, 53 M.J. 235, 237 (C.A.A.F. 2000). "Where improper argument occurs during the sentencing portion of the trial, we determine whether or not we can be confident that the appellant was sentenced on the basis of the evidence alone." *United States v. Frey*, 73 M.J. 245, 248 (C.A.A.F. 2014) (citation, internal brackets, and internal quotation marks omitted). "When arguing for what is perceived to be an appropriate sentence, the trial counsel is at liberty to strike hard, but not foul, blows." *Baer*, 53 M.J. at 237 (citing *United States v. Edwards*, 35 M.J. 351 (C.M.A. 1992); *Berger v. United States*, 295 U.S. 78 (1935)).

The trial counsel's argument was not improper because it was based on evidence properly admitted during the merits. During the providence inquiry, the military judge brought up the appellant's MOS status:

> MJ: So all of these facts that we just covered support that you were drunk and disorderly on this occasion; is that true?
>
> ACC: Yes, sir.
>
> MJ: Because there was certain responsibilities that you, as a military police officer, should have complied with; is [that] right?
>
> ACC: Yes, sir.
>
> MJ: And as a military police officer, you actually have a duty to support the good order and discipline of Marines in your unit; is that right?
>
> ACC: Yes, sir.
>
> MJ: Whereas here it supports that you actually assisted Marines in your unit to include junior Marines in your unit in disobeying rules and regulations that apply to them; right?
>
> ACC: Yes, sir.[5]

The military judge then referred to the appellant's off-duty status as a military police officer, as referenced multiple times in the stipulation of fact. The appellant never objected to any of these questions, or to the admission of the stipulation of fact. In fact, the military judge had explained to the appellant that even though he had signed the stipulation of fact, it would not be admitted over his objection. After accepting the appellant's pleas, the military judge noted that he would "consider the matters addressed during

---

[5] Record at 75-76.

the providency inquiry, including the stipulation of fact, Prosecution Exhibit 1, in determining a sentence."[6]

"Unless the military judge has ranged far afield during the providence inquiry, the [appellant's] sworn testimony will provide evidence 'directly relating to' the offenses to which he has pleaded guilty." *United States v. Holt*, 27 M.J. 57, 60 (C.M.A. 1988). "Absent a prohibition in the [R.C.M.] 1000 series in the Manual for Courts-Martial, . . . information elicited from the [appellant] under oath during the providence inquiry may be considered during sentencing." *United States v. Figura*, 44 M.J. 308, 310 (C.A.A.F. 1996) (citations omitted).

As a zealous advocate for the government, the "trial counsel may 'argue the evidence of record, as well as all reasonable inferences fairly derived from such evidence.'" *United States v. Halpin*, 71 M.J. 477 (C.A.A.F. 2013) (quoting *Baer*, 53 M.J. at 237). The trial counsel's comments regarding the appellant's MOS were permissible because the appellant's status as a military police officer had been properly admitted during the providence inquiry and through the stipulation of fact. As the trial counsel's argument was not improper, there was no material prejudice to the substantial rights of the appellant.

**B. Accepting plea to drunk and disorderly conduct**

The appellant claims the military judge abused his discretion in accepting the appellant's plea to the drunk and disorderly conduct charge because there are no facts in the record to support that the appellant's conduct was service discrediting. We disagree.

We review a military judge's acceptance of a guilty plea for an abuse of discretion, reversing only if the "record shows a substantial basis in law or fact for questioning the plea." *United States v. Moon*, 73 M.J. 382, 386 (C.A.A.F. 2014) (citations omitted). "[T]o establish an adequate factual predicate for a guilty plea, the military judge must elicit factual circumstances as revealed by the accused himself that objectively support that plea." *United States v. Jordan*, 57 M.J. 236, 238 (C.A.A.F. 2002) (citation, internal brackets, and internal quotation marks omitted). "[W]e have not ended our analysis at the edge of the providence inquiry but, rather, looked to the entire record . . . including the existence of and reference to the stipulation" of fact, to determine whether this predicate is established. *Id.* at 239. However, "[f]ailure to explain each and every element of the charged offense to the accused in a clear and precise manner . . . is not reversible

---

[6] *Id.* at 113.

error" if the facts supporting each element exist in the record. *United States v. Fisher*, 58 M.J. 300, 304 (C.A.A.F. 2003) (citation omitted).

Drunk and disorderly conduct which is to the prejudice of good order and discipline in the armed forces authorizes a maximum permissible punishment of confinement for three months and forfeiture of two-thirds pay per month for three months. If similar conduct is under circumstances that bring discredit upon the military service, the maximum punishment is confinement for six months and forfeiture of two-thirds pay per month for six months. MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.), Part IV, ¶ 73e(3)(b) and (c). Thus, as a sentence escalator in drunk and disorderly offenses, pleading and proving service discrediting conduct doubles the permissible punishment. Accordingly, unlike most offenses under Article 134, UCMJ, "conduct of a nature to bring discredit upon the armed forces" must be specifically pled and proved in drunk and disorderly specifications to authorize the greater maximum punishment. *Id.,* ¶ 73c(3).

Service discrediting conduct does not require proof that the public was actually aware of the conduct at issue. "The focus of [this element] . . . is on the 'nature' of the conduct, *whether the accused's conduct would tend to bring discredit on the armed forces if known by the public*, not whether it was in fact so known." *United States v. Phillips*, 70 M.J. 161, 165-66 (C.A.A.F. 2011) (emphasis in original).

The military judge inquired as to the service discrediting nature of the appellant's conduct:

> MJ: Was your conduct . . . of a nature to bring discredit upon the armed forces?
>
> . . .
>
> ACC: . . . [H]ad someone outside of the armed forces seen it, they would think poorly of the armed forced servicemembers.
>
> MJ: So you agree that your conduct would have lowered the public's opinion of the service if someone in the civilian community had seen it?
>
> ACC: Yes, sir.
>
> MJ: Do you admit and believe that your conduct discredited the service?
>
> ACC: Yes, sir.[7]

---

[7] *Id.* at 71-72.

We have previously held, in facts quite similar to this case, that a guilty plea to drunk and disorderly conduct was provident based principally on the appellant's explanation of how his actions would tend to bring the service into disrepute or lower it in public esteem. *United States v. Staley*, 50 M.J. 604, 608 (N-M. Ct. Crim. App. 1999). Here, the appellant agreed that his conduct was service discrediting and stipulated that removing LCpl EES's shirt and touching her vagina while she was drunk would endanger public morals and outrage public decency. While more facts could have been elicited by the military judge to clarify and support this conclusion, we are satisfied that the appellant's guilty plea was provident.

To prevail on appeal, the appellant has the burden to demonstrate that "there is something in the record of trial, with regard to the factual basis or the law, that would raise a substantial question regarding the appellant's guilty plea." *United States v. Inabinette*, 66 M.J. 320, 322 (C.A.A.F. 2008). *See also Moon*, 73 M.J. at 386. The appellant here has failed to do so.

## C. Delay in post-trial processing

The appellant argues that he has been deprived his due process rights to a speedy appellate review because the CA took his action 133 days after the completion of the court-martial. We disagree.

"This court has recognized that convicted servicemembers have a due process right to timely review and appeal of courts-martial convictions. . . . We review *de novo* claims that an appellant has been denied the due process right to a speedy post-trial review and appeal." *United States v. Moreno*, 63 M.J. 129, 135 (C.A.A.F. 2006) (citations omitted). When a CA fails to take action within 120 days from the completion of trial, the delay is presumptively unreasonable and triggers the balancing of "the four *Barker*[8]/*Moreno* factors: '(1) length of the delay; (2) the reasons for the delay; (3) the appellant's assertion of the right to timely review and appeal; and (4) prejudice.'" *United States v. Arriaga*, 70 M.J. 51, 55-56 (C.A.A.F. 2011) (quoting *Moreno* 63 M.J. at 135).

### 1. Length of the delay

The appellee concedes the 133-day delay is facially unreasonable and favors the appellant.

### 2. Reasons for the delay

The CA principally attributed the delay to "[p]reparation and authentication of the 944-page record of trial [which] consumed 73 days."[9] In

---

[8] *Barker v. Wingo*, 407 U.S. 514, 530 (1972).

[9] CA's Action of 14 Oct 2016 at 4.

reality, the record comprises only 149 pages of transcript, and timely preparation of the record of trial—especially one relatively small—is a normal government responsibility. *See United States v. Toohey*, 63 M.J. 353, 360 (C.A.A.F. 2006). Additionally, the CA still took 28 days to act after receiving the appellant's clemency matters. The CA gives no reasons for the delay except normal administrative issues, which our superior court has declared "are not legitimate reasons justifying otherwise unreasonable post-trial delay." *Arriaga*, 70 M.J. at 57 (citations omitted). This factor weighs in favor of appellant.

### 3. Assertion of the right to a timely review and appeal

The appellant did not object to the 13-day delay or assert his right to a timely review of his case until 6 January 2017, 84 days after the CA's action. We recognize that timely review of his case always rests with the government, and he "is not required to complain in order to receive timely convening authority action." *Moreno*, 63 M.J. at 138 (citation omitted). However, we weigh this factor slightly in favor of the government.

### 4. Prejudice

In assessing the prejudice factor, we consider: "'(1) prevention of oppressive incarceration pending appeal; (2) minimization of anxiety and concern of those convicted awaiting the outcome of their appeals; and (3) limitation of the possibility that a convicted person's grounds for appeal, and his or her defenses in case of reversal and retrial, might be impaired.'" *Id.* at 138-39 (quoting *Rheuark v. Shaw*, 628 F.2d 297, 303 n.8 (5th Cir. 1980)).

The same day the appellant was sentenced to 240 days of confinement, he was awarded 216 days of credit for pretrial confinement.[10] In other words, he was released from confinement long before his 6 February 2017 filing alleging prejudice. Therefore, he has not suffered any oppressive incarceration pending his appeal. Additionally, he has not identified any particular anxiety or concern pending the outcome of his appeal. Lastly, he has failed to demonstrate that any grounds for his appeal—or any defenses he would raise if his case were to be reversed or retried—have been hampered in any way. In fact, the appellant admits that, "[u]nfortunately, it is difficult for [him] to identify any problems he might encounter at a rehearing at this juncture."[11] This factor weighs heavily in favor of the government.

Weighing all four factors—the first two favoring the appellant and the last two favoring the government—we find there is no due process violation

---

[10] Record at 113. However, the CA credited the appellant with 217 days.

[11] Appellant's Brief at 14.

in the delay of the post-trial processing in this case. Principally, the appellant has not demonstrated any prejudice whatsoever from the 13-day delay in the CA's action.

Finally, we are cognizant of our broad power under Article 66(c), UCMJ, "to grant sentence relief for excessive post-trial delay even in the absence of actual prejudice." *United States v. Brown*, 62 M.J. 602, 605 (N-M. Ct. Crim. App. 2005) (citing *United States v. Tardif*, 57 M.J. 219, 224 (C.A.A.F. 2002)) (additional citations omitted). Given the post-trial delay in the CA's action was only 13 days, the appellant has alleged no harm from the delay, and there is no evidence of bad faith or gross negligence on the part of the government, we decline to grant relief. *See id.* at 606-07.

### III. CONCLUSION

The findings and the sentence as approved by the CA are affirmed.

Senior Judge MARKS and Judge WOODARD concur.

For the Court



R. H. TROIDL
Clerk of Court